## C. SWEENEY *v.* J. N. THOMASON.

CONTRACT. *Parol proof.* In a suit upon contract "to pay eight dollars per thousand for brick in the wall," proof of the usage or custom that the number of brick in the wall was to be ascertained by measurement and not by actual count, is incompetent. The terms of the contract are not ambiguous. The words and terms of the contract are not terms of art having any special signification or meaning different from their ordinary or popular meaning. The number of brick should be counted, but if not practical to ascertain the number by actual count, there can be no objection to adopting estimates based upon measurement, as the best means of approximating the number.

FROM HENRY.

Appeal from the Chancery Court at Paris. JOHN SOMERS, Ch.

COLE & SWEENEY for complainant.

F. WILLIAMS for defendant.

MCFARLAND, J., delivered the opinion of the court.

This bill was brought to recover the amount due the complainant for the brick work in building a brick house for the defendant, under a written contract. The contract stipulates that the complainant is to furnish the material and build the house, "for which," in the language of the contract, "said Thomason is to pay him eight dollars per thousand for brick in the wall," * * * * * "said work is to be as though solid for all openings for doors and windows except the hall, and not that, if to be faced, or partly so, with brick." The house was built and a controversy arose as to the number of "brick in the wall," in the meaning of the above contract.

The complainant insisted that by the custom of brick masons, the number was to be ascertained by measurement, and the application of certain rules, as follows: Counting twenty-one bricks for every lineal foot of a thirteen inch wall, and fourteen bricks for every lineal foot in a nine inch wall. The walls of the house in controversy were, by the contract, in some parts, nine inch walls, and in other thirteen inch walls. It was insisted that by the same usage, a "nine inch wall" means the width of two bricks "side by side," and a "thirteen inch wall" means three bricks "side by side," without regard to the actual thickness of the wall.

Sweeney v. Thomason.

The complainant contended that these rules should be followed without regard to the actual number of "bricks in the wall." In his testimony he also asserts that the rule in assertaining the number of feet is to measure all outside walls "outside to inside," and inside walls as if they passed entirely through the outside walls, so as to count part of the wall twice, but in his deposition he does not insist upon adhering to this rule. The bill charges that by the rules of measurement the building contains 124,540 bricks. The complainant's deposition fixes the number at 106,598.

The defendant insisted upon an actual count and an estimate of the openings upon the same basis, which, according to his proof, shows the number of bricks to be, at most, 78,810. He, however, proposed, by way of compromise, to pay for 90,000 bricks, or he proposed to go with complainant or any one he might select, and make the count, and pay complainant for 8,000 more than the count. These propositions were rejected. Defendant had paid $632.11.

The chancellor's decree was in favor of the complainant, and the defendant appealed.

The only proof in regard to the usage or custom alleged, is the testimony of the complainant and one other brick-mason. Complainant, after giving the rule he had adopted, was asked by his counsel to state "what other method of determining the number of bricks in the wall is used by contractors of brick work. His answer is: "I don't know that I can state any other. I don't use any other." The other witness says he knows of no other rule of counting,

that he never worked on a house where it was counted differently. The defendant testifies that he knew of no such usage or custom when he made the contract; he says he dictated the term "brick in the wall" in the contract, to avoid being charged with the count at the kiln. The question is, whether the proof is admissible for the purpose for which it was introduced, and if so, is it sufficient to establish the meaning given by the chancellor to the terms used in the written contract.

The words and terms used in the contract *prima facie*, at least, are not terms of art having any special signification or meaning, different from their ordinary or popular meaning. The words "per thousand brick in the wall" will be readily understood to mean literally what the words imply. There is no ambiguity or uncertainty in the meaning, nor is there any word used not readily understood without interpretation by experts.

It would hardly be admissible to prove that by custom or usage of brick-masons "1,000" bricks means "500," or any number less than "1,000." Where it is not practical to ascertain the number by actual count, there can be no objection to adopting as the best means of approximating the number, estimates based upon measurement. But such estimates ought ordinarily to be based upon some rule calculated to ascertain the actual number. That is to say, if by actual count a lineal foot of a wall be found to contain a given number of bricks, this rule may be adopted as to the remainder of the wall. But why arbitrarily assume that a lineal foot of the wall con-

Sweeney v. Thomason.

tains a number of bricks that it is conceded it does not contain? Clearly this cannot be done unless as contended in behalf of the complainants: The words "per thousand brick in the wall" means not actually "per thousand," but "per thousand" as ascertained by the rule of brick-masons above referred to.

Conceding for the argument, that such a rule or usage might be established, and the meaning of a written contract, otherwise plain and unambiguous, made to conform thereto—a concession only made for the argument. Still we think the proof in this case is insufficient for the purpose. Courts must construe written contracts according to the intention of the parties to be gathered from the language, and interpreted in the light of the accompanying circumstances. If at the time and place the contract was made, the usage and custom in question had become so general and well established as to afford a presumption that it was known to the defendant, and the contract entered into in reference thereto, then it might be sufficient. But the proof of the complainant only is that he has always adopted the rule, and he cannot say that there is any other, or that he knows of no other, and the proof of the other witness is substantially to the same effect. We see no reason why contracts shall not be made to express what is really intended. If the complainant meant to stipulate that 1,000 bricks should mean anything less than 1,000, it would have been easy to so express it upon the face of the contract, and then no one would be deceived or mislead.

We see no sufficient reason for holding that this defendant has agreed to pay anything more than is expressed in plain language in his contract, or that he understood it to mean anything different from the plain and natural import of the language: See *Bedford* v. *McCall*, 11 Hum., 247. The contract being to pay eight dollars per thousand for brick in the wall, the question of fact was the ascertainment of the number, either by actual count if practical, or by some mode of measurement calculated to ascertain the number. The complainant, however, is not willing to accept payment for the actual number of bricks, but insists upon being paid upon a wholly different basis. The only proof going to show the correct number of bricks according to the contract, is the testimony of the defendant, and according to this, the complainant has been fully paid.

The decree will be reversed with costs.