**LILES v. PEISER et al.**

No. 10776.

United States Court of Appeals
Sixth Circuit.

April 11, 1949.

MARTIN, Circuit Judge.

The Referee in Bankruptcy disallowed the petition of appellant, doing business as Liles Electric Company, for reclamation of certain machinery, material and equipment, and for the enforcement of liens for labor and materials supplied the bankrupt Independent Tool and Machinery Co. The claim of appellant was reduced $1,377.37 by the Referee and allowed as an *unsecured* claim in the amount of $9,962.82.

The Referee filed no separate findings of fact and conclusions of law. He denied the petition of appellant by an order in which inadequate statements of fact were intertwined with the bare announcement of legal conclusions. He wrote no elucidating opinion and cited no interpretative decisions of the Tennessee courts, or any other authorities, but merely quoted in part section 7913 of the Tennessee Code. The District Judge confirmed the mixed findings and conclusions contained in the order of the Referee, denied petitioner's prayer for review, and dismissed the petition.

The Independent Tool and Machinery Company (the bankrupt) conducted a manufacturing business at two leased locations in Memphis, Tennessee. One location, the Ragsdale property, with three buildings thereon, was at 814 Scott Street and was known as Plant No. 1. From December 31, 1946, to February 25, 1947, the date of bankruptcy, Independent had no lease in writing on the Ragsdale premises. The other premises, the Klyce property at 921 Rayner Street, leased by Independent consisted of two buildings. The first, known as Plant No. 2, was occupied by Independent under demise in writing dated April 1, 1946, and extending into 1951. A right of re-entry by lessor in event of lessee's bankruptcy was reserved in this lease. The other building at 921 Rayner Street, known as Plant No. 3, was occupied by the bankrupt as sub-tenant of the American Plating Works under a month-to-month tenancy.

By agreements with the owners of the leased premises, Independent was privileged to remove all electric wiring, switches, transformers, and the like, which it had placed on the property. The machinery installed and used by Independent on the

W. Wright Mitchell, of Memphis, Tenn. (Robert M. Nelson and W. Wright Mitchell, both of Memphis, Tenn., on the brief), for appellant.

Charles M. Crump, Marx J. Borod and David Ballon, all of Memphis, Tenn. (Charles M. Crump, Rosenfield & Borod and David Ballon, all of Memphis, Tenn., on the brief), for appellees.

Before HICKS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

leased premises belonged to it. Upon being notified by the City Inspection Department in December, 1945, that its plant on Scott Street was inadequate and would have to be rewired and put in shape, Independent orally contracted with appellant to do the necessary work to that end. Liles began performance forthwith. Also, he contracted orally to do certain work for Independent at its plants on Rayner Street. All contracts between Independent and Liles were oral except an ante-dated alleged conditional sales agreement and contract, to be hereinafter discussed.

The work on the No. 3 Plant on Rayner Street consisted in rewiring machines which had been moved there from the plant on Scott Street. This work was completed before December 6, 1946. On December 13th of that year, Independent paid Liles in full for all labor and materials furnished by him up to December 6, 1946. Liles continued his work at the Scott Street plant until two days before Independent's voluntary bankruptcy. Work of no consequence was done by Liles in Plant No. 2 on the Klyce property.

Independent had executed a $100,000 promissory note, dated January 9, 1946, payable to the Union Planters National Bank and secured by chattel trust deed on its machinery and equipment. This note and security were later assigned to Arnold and Walter Klyce. The bankrupt being indebted to them in an amount in excess of $95,000, the Referee in Bankruptcy confirmed on April 21, 1947, a public sale to the Klyces of the dies, jigs and fixtures located in Plant No. 1, certain machinery and equipment at Plant No. 3 listed on the trustee's inventory, and the machinery and equipment in Plant No. 1, with the exception of certain items listed on that inventory. The consideration recited in the Referee's order was $95,000; and it was provided therein that the purchasers should pay in cash to the trustee sums equal in amount to any liens against the property which should be finally proved and allowed in the bankruptcy cause.

On the same date, April 21, 1947, appellant filed a petition for reclamation and for enforcement of alleged liens for labor and materials. He averred that, on September 2, 1946, he had entered into a contract with the bankrupt to furnish labor and material to rewire its plants; that the property at 814 Scott Street was owned by Mrs. Banks and Mrs. Ragsdale, and the property at 921 Rayner Street was owned by Mrs. Elise Klyce and Mrs. Mary Klyce; and that he was informed that the bankrupt was occupying these properties under a month-to-month oral lease. The petitioner alleged further that, by the same conditional sales contract dated September 2, 1946, preserved in the form of an attached memorandum letter, he retained title to the materials furnished by him to the bankrupt. He asserted, moreover, a lien by virtue of section 7914 of the official Code of Tennessee, hereinafter quoted.

After praying for service, for an answer by the trustee, and for a show cause order, he prayed for the right to enter upon the premises and reclaim and take possession of all materials theretofore furnished by him and used in the work performed on the contract, for the purpose of "advertising and selling same" under the "Tennessee Conditional Sales Statute [Code, § 7286 et seq.]", the proceeds to be applied "in the reduction of the costs and purchase price of said materials." He prayed further for the declaration and enforcement of a lien against all machinery and equipment listed in attached exhibits. Most of the machinery and equipment described was included in the aforementioned property sold at public auction to the Klyces. In an amended petition, filed in May, 1947, he prayed that, pursuant to sections 7920 and 7921 of the Code of Tennessee, he be granted the same relief asked for in the original petition.

On May 24, 1947, the Trustee in Bankruptcy filed exceptions to appellant's petition for reclamation and for enforcement of his alleged lien. The trustee denied that the alleged contract of September 2, 1946, was a valid conditional sales contract; and averred that the document was not actually executed until within ten days prior to the filing of the petition in bankruptcy, that the purported contract was prepared, executed and ante-dated in a fraudulent effort by appellant to claim retention of title to materials already furnished, and that "the purported contract is invalid insofar as it pur-

ports to retain title to materials furnished as security for labor and services performed." The contract was further attacked as invalid in failing to describe accurately the property to which title is stated to be retained. The exceptions of the trustee, moreover, denied that appellant is entitled to a lien by virtue of section 7914 of the Code of Tennessee, or any other statute, or by virtue of the common law.

Upon the hearing before the Referee, Clement, president of the company, testified that the letter claimed to be a conditional sales contract was executed, not upon the date appearing on its face—September 2, 1946—but was in fact executed, to the best of his recollection, on February 15, 1947. The appellant admitted that the letter was ante-dated, and did not deny that it was executed shortly before the bankruptcy. The letter in question reads, as follows: "Mr. J. W. Clement: We propose to furnish the labor and materials to rewire plant located at 814 Scott Avenue, also No. 3 building, and Plant No. 2, located at 921 Rayner, as follows: Labor at rate of, electricians, three dollars per hour, helper, one dollar and a half; material, at the rate of cost plus forty per cent; all wiring materials, including wire conduit, switches, motor controls and transformers, to remain the property of the Liles Electric Company until the work is completed, and fully paid for." The letter was signed, "Liles Electric Company Glenn Liles (Owner.)"; and was undersigned: "Accepted by Independent Tool and Machine Company. J. W. Clement, president."

There can be no doubt that the Referee, confirmed by the District Judge, was correct in holding this ante-dated letter invalid as a conditional sales contract. Indeed,

appellant does not press upon us that this was erroneous; but bases his appeal upon alleged error in the refusal of the District Court to apply in his behalf the mechanics' and furnishers' lien laws of Tennessee as he construes them.

In his original petition, appellant based his right to a lien upon section 7914 of the official Code of Tennessee, which provides: "There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, or repaired, or for fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or his agent, in favor of the contractor, mechanic, laborer, founder or machinist, who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or material, and in favor of all persons who do any portion of the work or furnish any portion of the materials for such building." It should be noted that, in the preceding section, 7913, of the Tennessee Code, the word "owner" is thus defined: "'Owner' includes the owner in fee of real property, or of a less estate therein, a lessee for a term of years, a vendee in possession under a contract for the purchase of real property, and any person having any right, title or interest, legal or equitable, in real property, which may be sold under process."

The appellant contends that machines, such as heavy transformers, switches, conduits, bolted down and installed, and wiring installed, "in leased property by a tenant," are "chattels real and therefore an interest in real property within the meaning of Sections 7913, 7914, 7916 and 7917 of the Tennessee Code" [1] and are under such

---

1 "Section 7913. Definitions.—[Material excerpts.] 'Improvement' means any building, structure, erection, alteration, demolition, excavation, or any part thereof, including ornamental shrubbery, on real property for its permanent benefit. * * * ["Owner" as defined in this section has been quoted heretofore in the body of this opinion.] * * * 'Real property' includes real estate, lands, tenements and hereditaments, corporeal and incorporeal, and fixtures."

Section 7914. [Heretofore quoted in full in body of opinion.]

"Section 7916. Extent of liens.—Such lien shall extend to, and only to, the owner's right, title or interest in the real property and improvements, existing at the time of the visible commencement of operation or thereafter acquired. If any part of the real property or improvements subject to such lien be removed by the owner or any other person at any time before discharge thereof, such removal shall not affect the rights of the lienor either in respect of the real property and improvements, or the part so removed."

statutes subject to "mechanics lien for labor performed thereon and material added thereto at tenant's request."

The main authority upon which appellant depends is Burr v. Graves, 72 Tenn. 552, decided by the state Supreme Court in 1880. In that case, the complainants, who had erected a cotton-cleaning plant for a lessee upon land in lessee's possession under an oral lease, filed their bill in chancery fifteen days before the expiration of one year of lessee's term to enforce a mechanics' lien "on the leasehold interest, building, machinery, and fixtures." In affirming a decree of the chancellor in favor of complainants, the Supreme Court of Tennessee said, inter alia: "The complainants were, under the original contract, entitled to a lien as mechanics for the debt thereby created, on the leasehold interest in the land, the building, engines, machinery and fixtures furnished and erected, for twelve months from the completion of the work: Code, sec. 1981, [contained in sec. 7914 of the present Williams' Code]; Alley v. Lanier, 41 Tenn. 540. The lease, even if void as a letting for three years, because not in writing, was good for one year, and the bill was filed before the expiration of the year."

■ It would seem from the opinion that machinery was not regarded by the court as "fixtures", and that the lien could be imposed upon the machinery only if considered to be an "improvement". But, under section 7913 of the existing Code, which was not in existence in 1880, "improvement" is now defined as "any building, structure, erection, alteration, demolition, excavation, or any part thereof, including ornamental shrubbery, on real property for its *permanent benefit*." [Emphasis supplied.] Upon the facts of the instant case, the movable machinery could not be deemed a "permanent benefit".

■ When Burr v. Graves was decided, although the law in Tennessee was that a leasehold interest is subject to mechanics' lien, (Alley & Bush v. Lanier, 41 Tenn.

540), the qualification to the rule had not been expressed, which now is found in section 7913, that the leasehold must be "for a term of years", or one "which may be sold under process". Construing Burr v. Graves most favorably to appellant's position, that authority does not now support the argument that mechanics' or furnishers' liens embrace trade fixtures owned by lessee, situated upon property in possession of lessee under a month-to-month tenancy.

■ It is true that, in Steger, Assignees, v. Arctic Refrigerating Company, 89 Tenn. 453, 14 S.W. 1087, 11 L.R.A. 580, cited by appellant, the court quotes with approval the language of Judge Cooper in Burr v. Graves, supra, that the "lien is favored by the Legislature, and should not be hazarded by dangerous niceties in its enforcement"; and reaffirms the doctrine that liens created for the benefit of those who have furnished labor or material for the erection of buildings or machinery should be liberally construed in favor of the lienor. Liberal construction, however, should not be overstrained. The highest Tennessee court has said: "The liberal construction spoken of in our cases refers to the subject-matter, that is, the property to which the lien attaches and against which it may be enforced; the rule is not applied to draw in those excluded from the benefit of the statute. Thompson v. Baxter, 92 Tenn. [305], 307, 21 S.W. 668, 36 Am.St.Rep. 85; [Chickasaw] Hotel Company v. [C. B. Barker] Construction Co., 135 Tenn. 305, 186 S.W. 115, L.R.A.1916F, 106. The Court cannot extend the benefit of the Statute to either persons or objects not embraced in its terms, and in determining the breadth and scope of the Act we must be guided by both the words and context." Pillow v. Kelly, 155 Tenn. 597, 599, 296 S.W. 11, 12.

In Tuec Co. v. McKnight & Merz, 140 Tenn. 67, 69, 203 S.W. 238, holding a theater's vacuum cleaning installation to be subject to mechanics' lien, parts of the mechanism were permanently attached to the

"Section 7917. Comprehension and duration of lien.—The lien shall include the building, structure, fixture, or improvement as well as the lot or land, and continue for one year after the work is finished or materials are furnished, and until the final decision of any suit that may be brought within that time for its enforcement."

building and other parts were not but were loose and removable. The entire vacuum cleaning installation was held subject to the lien, it being "perfectly plain that a vacuum cleaner, under modern conditions, is material used in the construction of the theater." Halley v. Alloway, 78 Tenn. 523, was cited by the court as authority. In both the Steger case, supra, and the Tuec case, the improvements upon which the liens were held enforceable became a permanent part of the buildings in which they were placed. In the case at bar, the machinery upon which the lien is sought was not permanently attached to the building and was removable by the lessee at will. In Bank & Trust Co. v. Fred W. Wolf Co., 114 Tenn. 255, 265, 86 S.W. 310, 312, the Tennessee court thus quoted from its earlier opinion in Johnson v. Patterson, 81 Tenn. 626: "Modern authorities all agree that the most controlling test of the question whether property connected with real estate is to be deemed realty or a mere chattel, removable at the pleasure of the owner, is the intention and purpose of the erection." In Hickman v. Booth, 131 Tenn. 32, 34, 173 S.W. 438, Mr. Justice (later Chief Justice) Green said: "In Tennessee only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold. [Citing authorities.] The usual test is said to be the intention with which a chattel is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture." Cf. Blue v. Gunn, 114 Tenn. 414, 425, 87 S.W. 408, 69 L.R.A. 892, 108 Am.St.Rep. 912, 4 Ann.Cas. 1157. By this test, the machinery involved in this case was certainly not a fixture.

The old case of Grewar v. Alloway, 3 Cooper Tenn.Ch. 584, adds no force to appellant's argument. There, the issue was between the owner of a theater and the mechanic who had installed therein chairs, balusters, railings, rollers and pulleys for shifting scenery, and the like. The articles furnished were for permanent use in the building. The court used the following language to distinguish such a case from one which involved trade fixtures owned by a lessee: "Such fixtures, like other trade fixtures, are, as between landlord and tenant, removable by the tenant, *but,* as between the owner and the mechanic, are subject to the mechanic's lien law." [Emphasis supplied.]

The following cases cited by appellee bear some weight against the contention of appellant; but, in our view of the case, are not crucial. Hart v. Appalachian Washed Coal Co., 139 Tenn. 204, 201 S.W. 515; Degraffenreid v. Scruggs, 23 Tenn. 451, 40 Am.Dec. 658; Allen v. Brown, 14 Tenn. App. 405, 408.

Of all the Tennessee decisions which have been considered, we find Truxall & Dummeyer v. Williams & McCallie, 83 Tenn. 427, 428, most apposite. In that case, a mechanic, employed by the owner of a portable engine, boiler and appurtenances to take the same from one place and erect them temporarily upon the land of another, was held not to be entitled under the then existing statutes of Tennessee to a lien, either upon the land or upon the machinery. In denying the right of the mechanic to a lien, the Supreme Court said: "But here is no ownership of a term, or any interest in the land whatever, to be subjected to complainant's claim, but only a permission to occupy with portable machinery another's land for the purpose of sawing his timber. The party owning the machinery could remove it at any time he chose. It is not a fixture erected by the owner for the beneficial use of his own land, as contemplated in the first section of the statute. It is only the temporary occupation of a party's land by the personal property of the owner, the property having no permanent connection whatever with his freehold. The only legal question is, then, whether a mechanics' lien exists on mere personalty, as such, of another while being temporarily used on a third party's land, by the permission of the land owner. The statute has not given such a lien, and we are not authorized to say it exists."

In the present controversy, likewise, we find that the statute has given no such lien as is claimed by appellant. There is no material difference between section 7914 and the operative Code section 2745 with

which the Tennessee court was concerned in the Truxall case, supra. It is true that, in that case, there had been no lease of any kind, but merely a temporary permissive right to put and operate a mill and machinery on land for the purpose of sawing timber, the owner of the land to receive one-half of the timber sawed; while, in the present case, the bankrupt was in possession of the property under a month-to-month tenancy. Inasmuch as this was not a lease for a term of years nor an interest which could be sold under process, the factual difference in the two cases does not distinguish them. The complainant here is not seeking a lien against a leasehold estate, but rather, as in the Truxall case, against machinery temporarily placed upon the leasehold.

In view of our conclusion that appellant has not established a valid lien under Tennessee law, it is unnecessary to discuss his secondary argument that the Tennessee mechanics' and furnishers' lien statutes give him priority over the lien of the chattel trust deed involved herein.

One issue remains. The District Judge sustained the Referee in Bankruptcy in reducing the unsecured claim of appellant by the sum of $1,377.37, constituting overtime improperly included in the claim. It was held that the cost of labor to be charged against the bankrupt in its cost plus contract with appellant had been definitely fixed and was evidenced in writing by the contract letter of February 15, 1947, antedated September 2, 1946. The rate therein provided was three dollars per hour for electricians and one-dollar-and-a-half per hour for helpers. Appellant insists that it was erroneously refused the right to prove that union employees receive extra compensation for work in excess of forty hours in a single workweek and receive, also, extra compensation for work performed on Saturdays, Sundays and at night. Appellant refers to Faulkner v. Ramsey, 178 Tenn. 370, 158 S.W.2d 710, and Earle v. Illinois Cent. R. Co., 25 Tenn.App. 660, 167 S.W.2d 15.

From our reading of the record and consideration of the evidence we find nothing substantial to justify a conclusion that Independent had knowledge that appellant was paying over-time to employees in excess of the contract rate and charging such payments to it. In the absence of such proof, we are of opinion that the specified contract for labor was binding on the parties; and that it was not erroneous to refuse to receive the proffered evidence as to custom. In Sweeney v. Thomason, 77 Tenn. 359, 363, 364, 42 Am.Rep. 676, the Tennessee court found no reason for holding, in relation to a contract for the supplying of brick, that the purchaser had agreed to pay anything more than was expressed in the plain language of the contract, or that he understood the contract "to mean anything different from the plain and natural import of the language." We think that in the instant case, likewise, there should be no departure from the agreement evidenced in writing.

The order of the District Court from which this appeal was taken is affirmed.