222 F.2d 431
 SOUTHERN PAINTING COMPANY OF TENNESSEE, Inc., a corporation;
and United Pacific Insurance Company, a
corporation, Appellants,
v.
UNITED STATES of America, for the Use of E. M. SILVER, Doing
Business as Silver Plumbing & Heating, Appellee.
 No. 5007.
 United States Court of Appeals Tenth Circuit.
 May 5, 1955.
 
 Howard G. Engleman, Salina, Kan. (E. S. Hampton, H. H. Dunham, Jr., John Q. Royce and C. Stanley Nelson, Salina, Kan., on the brief), for appellants.
 Malcolm Miller, Wichita, Kan. (James P. Mize, Salina, Kan., George B. Powers, Carl T. Smith, Wichita, Kan., on the brief), for appellee.
 Before BRATTON, HUXMAN and PICKETT, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This is an appeal by the defendants, Southern Painting Company of Tennessee, Inc., and the United Pacific Insurance Company, from a judgment of $13,000 rendered by the United States District Court for the District of Kansas in favor of the appellee, E. M. Silver, doing business as Silver Plumbing and Heating, in an action by the United States for the use of E. M. Silver, under the Miller Act, 40 U.S.C.A. § 270a, etc.
 
 
 2
 The complaint alleged that Southern Painting Company of Tennessee, Inc., herein called Southern, hired Silver as a subcontractor to furnish all labor, material and supervision in connection with the plumbing and heating specifications under two contracts which Southern had with the United States; that after he had practically completed such work under the contract, Southern breached the contract by refusing to allow him to finish the work; that because of such breach he was entitled to sue for the reasonable value of the work he had performed under quantum meruit. He asked for judgment in the sum of $72,000.
 
 
 3
 In its answer Southern alleged that Silver wrongfully breached the contract, forcing Southern at great cost to get another contractor to complete the work; that Silver had been paid more than his services were worth; that Silver had entered into a settlement with Southern as to the portion of work covered by Contract 999, and that the action was in the nature of a breach of contract and as such could not be maintained under the Miller Act; hence the court was without jurisdiction.
 
 
 4
 The terms of the contract are without dispute and only a short reference will be made thereto. Southern held two contracts with the Government, No. ENG 999 and ENG 1052 for rehabilitation work on Government camps near Salina. Under the subcontract with Silver, he was to furnish all labor and material necessary to do the plumbing and heating work under the two contracts. Southern agreed to reimburse Silver for all material, labor, taxes, insurance, etc., and agreed to purchase tools and equipment necessary to do the work. Silver was to receive $6,000 lump sum for the work under Contract 999 and $4,000 lump sum for work under Contract 1052, plus a fair percentage of the net profit on all additional extra plumbing and heating work.
 
 
 5
 The parties are in disagreement as to who breached the contract. Southern claimed Silver did. It is sufficient to say that the court found that Southern breached the contract. We are satisfied that the evidence clearly sustains this finding. Apparently more than 90% of all the work under the subcontract was completed at the time of the breach by Southern. Silver had peen paid $7,000 of his fee under the subcontract. The court found the fair and reasonable value of Silver's services under the contract and found that in addition to what he had received he was entitled to receive an additional $13,000, together with interest from July 15, 1952, until paid, that being the day on which Silver was wrongfully discharged, according to the court's finding.
 
 
 6
 Appellants contend that plaintiff's cause of action was for breach of contract and, therefore, not maintainable under the Miller Act. However, a casual reading of the complaint clearly shows that it was an action in which Silver sought the recovery of the fair and reasonable value of services performed to the time of the wrongful breach of the contract by Southern. Thus Paragraph 11 of the complaint states: 'In consequence of the wrongful breach and interference by Contractor aforesaid, E. M. Silver does hereby make claim upon quantum meruit for the reasonable value and price of his performance.' The evidence of the appellee to sustain this cause of action and the resulting damage substantially follows this theory of the case.
 
 
 7
 Appellant further urges that appellee was not a subcontractor. In Clifford F. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 108, 64 S.Ct. 890, 894, 88 L.Ed. 1163, the Supreme Court points out that the Miller Act itself makes no attempt to define the word 'subcontractor.' The court in substance defines a subcontractor under the Miller Act as one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, 'thus excluding ordinary laborers and materialmen.' The court then went on to say that the technical definition of a subcontractor was the one referred to in the Miller Act. A casual examination of the contract would indicate that Silver was a subcontractor. The main contract required Southern to install the plumbing and heating and the obligation under this portion of the contract was transferred to Silver. He agreed to install the plumbing and heating, pay all the bills, labor costs and so on connected therewith. An analogous case in which similar facts appear is Basich Brothers Construction Co. v. United States, for the Use of Turner, 9 Cir., 159 F.2d 182. The case of United States, for Use and Benefit of Dorfman v. Standard Surety and Casualty Company, D.C., 37 F.Supp. 323, relied on the appellant, is clearly not in point. There the alleged subcontract was executed after everything was performed and by it the alleged subcontractors agreed to furnish all labor and the contractor to furnish all equipment, material and compensation therefor. All the alleged subcontractor really agreed to give was personal services in painting the exterior of a building. The court indicated that the fact that the contractor went into bankruptcy after the work was done seemed to have influenced the interested persons to distort the facts.
 
 
 8
 The main portion of appellant's attack on the judgment is devoted to its argument that quantum meruit does not lie under the facts of the case. That quantum meruit may be asserted under the Miller Act where there is a breach of the contract seems to be clear. See United States, for Use of Susi Contracting Co. v. Zara Contracting Co., 2 Cir., 146 F.2d 606, 610. That was a Miller Act case and the court said, 'For it is an accepted principle of contract law, often applied in the case of construction contracts, that the promisee upon breach has the option to forego any suit on the contract and claim only the reasonable value of his performance. * * *' Recovery was permitted in that case for quantum meruit. United States, for Use of Wander v. Brotherton, D.C., 106 F.Supp. 353, also indicated that quantum meruit may be relied upon under the Miller Act. Other cases bearing on this point are Continental Casualty Company v. Schaefer, 9 Cir., 173 F.2d 5, and Great Lakes Construction Company v. Republic Creosoting Co., 8 Cir., 139 F.2d 456. In these cases, recovery in excess of the contract price was permitted.
 
 
 9
 Appellant cites two Kansas cases under the Kansas mechanics' lien statute in support of its argument that the amount of recovery cannot be in excess of the amount contracted to be paid. The amount of recovery perhaps is controlled by Kansas law. The cases relied upon, however, are distinguishable. In those cases there was no breach of contract justifying a recovery under the lien for quantum meruit and the court so held. The case of Jenson v. Lee, 67 Kan. 539, 73 P. 72, clearly held that where the contract is wrongfully breached it may be abandoned and recovery may be had under quantum meruit. There are other cases to the same effect. See Templeton v. Biegert, 79 Kan. 638, 100 P. 654; Underwood v. Viles, 106 Kan. 287, 187 P. 881.
 
 
 10
 It is also contended that the judgment of the court is grossly excessive and that the findings and judgment are not supported by competent evidence. It is contended that plaintiff's Exhibit 24 offered to establish value of the services was improperly received in evidence. Without describing the exhibit in detail, we are inclined to agree that it was improperly received. But plaintiff's proof of the value of the services was not predicated alone on Exhibit 24. Delbert W. Robertson, an experienced plumbing contractor, testified for plaintiff as to the value of the services performed by plaintiff. His evidence was competent and was sufficient to sustain the findings of the court with respect to the reasonable value of the services. Neither do we feel that the record clearly shows that the court relied alone on Exhibit 24 in reaching its conclusions as to the value of Silver's services. We think the findings of the court and its judgment except as hereinafter pointed out find support in the record.
 
 
 11
 Finally, it is contended that the court erred in allowing interest on the judgment from the date silver was discharged rather than from the date of the judgment. The allowance of interest in ordinary litigation in federal courts is determined by state law. In Illinois Surety Company v. John Davis Company, 244 U.S. 376, 377, 381, 37 S.Ct. 614, 617, 61 L.Ed. 1206, the court said, 'The contract and bond were made in Illinois and were to be performed there. Questions of liability for interest must therefore be determined by the law of that state.'[1] Kansas General Statutes, 1949, 16-201 provides: 'Creditors shall be allowed to receive interest at the rate of six percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent, or money due on settlement of account, from the day of liquidating the same and ascertaining the balance; * * * for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; * * *.'
 
 
 12
 Kansas has consistently held that interest is not recoverable on unliquidated claims until the amount due has been ascertained. A good statement of the rule is found in Winfield Mortgage and Trust Company v. robinson, 89 Kan. 842, 132 P. 979, 981, as follows: 'There was a bona fide controversy as to the amount to which he was entitled out of the trust funds which came into his hands, and the claim of each party to the controversy were in part sustained. If the claims had been made in bad faith, or if there had been an unreasonable and vexatious delay of payment, there would be some reason to demand the payment of interest.' The court then held that interest could not be allowed on the unliquidated account until the amount thereof was ascertained. Neither do we think that the case of In re Mecke's Estate, 166 Kan. 400, 201 P.2d 1030, is to the contrary. In that case an attorney had rendered legal services to the deceased during her lifetime in three separate matters, for which he sent her a statement for $625.00 attorney's fees and $3.55 for expenses. She remitted $125.00 and acknowledged the reasonableness of the charges. When a claim was thereafter exhibited to the administrator for the balance, he resisted it among other grounds on the ground that the charges were unreasonable. Interest was asked and allowed from the date the demand was exhibited to the administrator. The Supreme Court indicated that under the facts of the case the attorney perhaps was entitled to interest from the date the services were completed, but in any event from the date the claim was exhibited to the administrator. Under the facts of the case the court might well have held that the claim was not an unliquidated claim.
 
 
 13
 Concluding that interest should be allowed only from the time the amount due was ascertained, or in other words from the date of the judgment, under state law is not in conflict with what our court said in St. Paul Mercury Indemnity Company v. United States, 10 Cir., 201 F.2d 57, or the cases upon which that opinion rests. All those cases deal with the right of the federal government or an agency thereof to collect interest on obligations due it and many of them are based upon federal statutes, such as the income tax statute, which provide for interest. While Concordia Insurance Company v. School District No. 98, 282 U.S. 545, 51 S.Ct. 275, 278, 75 L.Ed. 528, was between private litigants in which the federal rule with regard to the allowance of interest was applied, it is apparent that had there been a clear decision by the state court, the federal court would have been required to follow it. Thus the Supreme Court said, 'In the absence of an authoritative state decision to the contrary, there was nothing in either which required the trial court in rendering its judgment to depart from the rule in respect of the allowance of interest which this court had recognized * * *.' While in Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265, it is stated that under certain circumstances interest may be allowed as an element of damages on an unliquidated claim, that case does not involve a conflict between state and federal law or which controls, if such conflict there be.
 
 
 14
 But even if we should apply the federal rule as fashioned by the Supreme Court, the result must still be the same. A good statement of the rule is found in Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 289, 84 L.Ed. 313, as follows: 'The cases teach that interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable.' That no doubt is also the reason upon which the general rule with respect to disallowance of interest on unliquidated claims as well as the rule of Kansas is based. Obviously, it would be unfair and inequitable to exact interest when the amount of an asserted claim is in dispute in good faith and could not be determined until after a judicial inquiry and sifting of all the facts.
 
 
 15
 As pointed out, under the express provision of the Kansas law as well as the fair inference of the federal rule, interest is recoverable even on an unliquidated account where there has been unreasonable and vexatious delay in the 'settlement of accounts.' That this entered into our decision in the St. Paul Mercury Indemnity Company case, supra (201 F.2d 61), is evidenced from the following statement in the opinion: 'The trial court found that the Indemnity Company, although aware of its obligations to Commodity under its bond, had unreasonably and vexatiously delayed payment.'
 
 
 16
 Silver in his complaint claimed more than five times the amount which he recovered. He alleged that the reasonable value of his services for which he had not been paid was $72,000, for which amount he prayed judgment. The evidence as to the value of his services was in sharp conflict. There was no finding nor could there have been one on the undisputed record that appellants were guilty of unreasonable and vexatious delay in the trial of the case. Interest accordingly should have been assessed only from the date of the judgment.
 
 
 17
 The judgment is modified to provide for interest from the date of the rendition thereof and as so modified is affirmed. The costs of the appeal are assessed equally to appellants and appellee.
 
 
 
 [1]
 See also Scotland County v. Hill, 132 U.S. 107, 10 S.Ct. 26, 33 L.Ed. 261; United States for the Use and Benefit of Lichter v. Henke Construction Co., 8 Cir., 157 F.2d 13; Continental Casualty Company v. Clarence L. Boyd Co., 10 Cir., 140 F.2d 115; United States, for Use and Benefit of Belmont v. Mittry Bros. Construction Co., D.C., 4 F.Supp. 216; Phillips Petroleum Company v. Oldland, 10 Cir., 187 F.2d 780