E. C. OTTINGER, an individual d/b/a Ottinger Construction Company; and Standard Accident Insurance Company, a corporation, Appellants,

v.

UNITED STATES of America, for the Use of C. W. BROWN, Contractor, Appellee.

No. 5155.

United States Court of Appeals Tenth Circuit.

Jan. 24, 1956.

Rehearing Denied March 15, 1956.

**406**

Walter D. Hanson, Oklahoma City, Okl. (Clarence P. Green, Oklahoma City, Okl., on the brief), for appellants.

Ellis M. Brown, McAlester, Okl. (Lonnie W. Brown and Preslie H. Brown, McAlester, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

E. C. Ottinger, doing business as Ottinger Construction Company, held a prime contract with the United States for the construction of thirty-seven powder magazines and the necessary roads, railroads, loading docks, and related work upon the premises of the United States Naval Ammunition Depot in McAlester, Oklahoma. This action was brought for the use and benefit of C. W. Brown, a subcontractor, under the provisions of the Miller Act[1] against the prime contractor and his bondsman, Standard Accident Insurance Company, to recover $16,116.72, which was the balance allegedly due the subcontractor for work and labor performed according to the terms of his contract. Judgment was entered in favor of the subcontractor, (on January 20, 1955), for $7,968.11, together with interest thereon from May 26, 1954. The prime contractor and his bondsman have appealed.

The judgment is challenged on the grounds that the amount of the allowance on some of the items was unsupported by evidence; that there was an overlapping of accounts; and that interest was erroneously allowed.

The subcontract was in the form of a letter written by Ottinger and accepted by Brown. It provided that Brown was to perform certain specific items of work relating to the vegetative cover, erosion control, and similar work on the project, in strict accordance with the specifications of the prime contract. It provided in part:

| Item No. | Description of Work | Unit Price |
|---|---|---|
| 1. | Fertilizing, Seeding & Mulching | $225.00 per Acre |
| 2. | Riprap Ditch Checks | 4.50 per Sq. Yd. |
| 3. | Broadcast Sodding | 2.75 per Cu. Yd. |
| 4. | Bermuda Ditch Checks | 1.25 per Sq. Yd. |
| 5. | Bermuda Slab Sodding | 1.25 per Sq. Yd. |
| 6. | Laid-up Riprap | 4.00 per Sq. Yd. |

"The unit prices stated above for the various items of work are intended to be full compensation including the cost of all labor, material, fertilizer, gypsum, seed, rock, equipment, insurance, and all other costs incidental to the complete performance of each item of work excepting that the baled hay required for mulching will be furnished by this Firm."

The work was fully performed and accepted by the Navy, both under the prime

---

1. This Act provides for the posting of a performance bond by a contractor who has any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States, and gives every person who furnishes labor or material in the prosecution of such work, the right to sue on the bond. 40 U.S.C.A. §§ 270a and 270b.

contract and the subcontract, and the prime contractor was paid in full by the United States.

■ The trial court found that Brown completed the fertilizing, seeding and mulching of ninety-six and one tenth acres. The defendants contend that not more than eighty-four acres were completed under this item. This difference grows out of the method employed by representatives of the parties in measuring the acreage, and the claim by the defendants that some areas were included which should have been excluded. The surface of the area to be fertilized, seeded and mulched was uneven and included the sides and tops of the igloo-shaped powder magazines. An engineer employed by Brown testified that he used an accepted method of measurement; that he computed the area which had been mulched and found that it contained ninety-six and twelve hundredths acres. An engineer for the defendants, who used a different method, found that there was less acreage in this area.[2] The trial court adopted the acreage as found by Brown's engineer. The finding is supported by substantial evidence, is not clearly erroneous, and is, therefore, binding here. United States v. National Ass'n of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007; J. P. (Bum) Gibbons, Inc., v. Utah Home Fire Ins. Co., 10 Cir., 202 F.2d 469; Brown v. American Nat. Bank, 10 Cir., 197 F.2d 911; American Home Fire Assur. Co. of New York v. Mid-West Enterprise Co., 10 Cir., 189 F.2d 528; Shoemaker v. Leeper, 10 Cir., 186 F.2d 372. There is no provisions of the contract which makes measurements of the prime contractor's engineers binding on the subcontractor on final settlement.

■ The evidence indicated that some of the work performed by Brown under other items of the subcontract were included in the measurements for determining the mulched areas. Upon questioning by the court, the engineer who made the measurements and computations on Brown's behalf testified that he measured the mulched area separate and apart from the areas of the other items. It would appear that the questioning by the trial court was for the purpose of determining whether there was an overlapping of the areas computed under the different items. We think, considering all the circumstances of the case, that the finding that there was no such overlapping must be sustained. All the work was done under the supervision and direction of Ottinger, and Brown was entitled to be paid for work which he was directed to do, even though the amount thereof may not have conformed with the specifications of the prime contract. This is particularly true where payments under the subcontract were different from those to be made under the prime contract, and the quantity of the work as shown by the specifications was subject to change.[3]

■ The only other question which warrants consideration is the allowance of interest. The subcontract provided that payment would be made to the subcontractor within five days of the date on which the prime contractor received final payment. The Navy made final settlement with the prime contractor on

---

2. The defendants used a horizontal plane measurement, and did not take into account any variations in the level of the surface of the earth caused by depressions or rises, either natural or artificial, while Brown's method did take such variations into account. The trial court concluded:
   "The methods employed by the defendant's engineers for measuring the quantities of work completed by the plaintiff were not the usual and customary methods of measurement within the meaning of the contract between these parties,

and such measurements by the defendant's representatives are not binding upon the plaintiff so as to preclude his showing the correct quantities of work for which he should receive payment."

3. A provision of the contract reads:
   "We have specifically agreed that the quantities of work shown on the Navy Plans will be materially changed and we have further agreed that the unit prices stated above will prevail regardless of the actual quantities of each item of work performed."

May 21, 1954, and the trial court allowed interest on the amount found to be due from May 26, 1954. The defendants contend that the claim is an unliquidated one and that interest should have been allowed only from the date of the judgment. The question is to be determined by reference to the law of Oklahoma. Illinois Surety Co., v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; Southern Painting Company of Tennessee v. United States for Use of Silver, 10 Cir., 222 F.2d 431; Continental Casualty Co. v. Clarence L. Boyd Co., 10 Cir., 140 F.2d 115.

█ In Oklahoma, interest is allowed from the day when a person is entitled "to recover damages certain, or capable of being made certain by calculation, and the right to recover is vested in him" upon that day. 23 Okl.St.Ann. § 6; Blackwell Oil & Gas Co. v. Mid-Continent Petroleum Corp., 182 Okl. 588, 79 P.2d 227; Abraham v. Stewart Bros. Cotton Co., Inc., 165 Okl. 73, 24 P.2d 992; Travelers Fire Insurance Co. v. Ranney-Davis Mercantile Co., 10 Cir., 173 F.2d 884, certiorari denied 337 U.S. 930, 69 S.Ct. 1495, 93 L.Ed. 1737; Continental Casualty Co. v. Clarence L. Boyd Co., supra; Hartford Accident & Indemnity Co. v. Collins-Dietz-Morris Co., 10 Cir., 80 F.2d 441.

██ The subcontract fixed the value of the services rendered; as to this value nothing was left to the discretion or judgment of the trial court. Facts were available by which the prime contractor could have computed the exact amount due. The fact that he made an erroneous calculation would not excuse him from liability for interest. The subcontract created an express obligation to pay money for the work done. This action is to recover money due and owing under the provisions of the subcontract. 23 Okl.St.Ann. § 22 provides

that "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon." Clearly the detriment to Brown was caused by the breach of an obligation to pay money only and due by the terms of the subcontract. We think Brown was entitled to interest on the amount due under either Sections 6 or 22. Deardorf v. Rosenbusch, 201 Okl. 420, 206 P.2d 996; Fidelity-Phenix Fire Ins. Co. of New York v. Board of Education, 201 Okl. 250, 204 P.2d 982, and cases cited; Blackwell Oil & Gas Co. v. Mid-Continent Petroleum Corp., supra.[4]

The defendants rely upon Vilbig Const. Co. v. Whitham, 201 Okl. 86, 201 P.2d 922, and Essley v. Mershon, Okl., 262 P.2d 417. These cases are clearly distinguishable. The Vilbig case was brought by a joint adventurer for an accounting and the agreement upon which the action was founded did not contain a fixed and definite formula from which the amount due the plaintiff could be ascertained. The Essley case was an equitable action for an accounting of oil runs, and there was no contractual provision in the nature of a fixed formula by which the amount due the plaintiff could be determined with reasonable accuracy. Southern Painting Company of Tennessee v. United States for Use of Silver, supra, is also distinguishable. There the subcontractor sued the prime contractor for wrongful discharge; sought to recover as damages the profits which he would have earned had he been permitted to complete the contract; and there was no basis in the contract for the fixing of damages in the event of a breach. In the instant case, the subcontract specified the types of work to be done by the subcontractor and fixed the unit prices to be paid therefor. By correct measurements, and calculations made in accordance with the fixed provisions of the

4. In the Blackwell Oil & Gas Case [182 Okl. 588, 79 P.2d 232], the Oklahoma Supreme Court said:
"Since the oil company's action was upon the breach of an obligation to pay money only, and since the amount sued for by the oil company was certain or capable of being made certain by calculation and its right to recover was vested in it upon a particular day, both the aforesaid sections 9964 and 9959 are applicable to this action."

contract, the prime contractor could determine the amount due the subcontractor. Interest, therefore, was properly allowed.

Affirmed.