**UNITED STATES of America, for the Benefit and on Behalf of Adam J. LANEHART, Appellant,**

v.

**UNITED ENTERPRISES, Inc., and Seaboard Surety Company, Appellee.**

No. 15431.

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1955.

Rehearing Denied Nov. 23, 1955.

Ashton L. Stewart, Baton Rouge, La., for appellant.

R. Emmett Kerrigan, Ralph L. Kaskell, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, JONES, Circuit Judge, and CHRISTENBERRY, District Judge.

CHRISTENBERRY, District Judge.

Pursuant to the Miller Act, § 2, 40 U. S.C.A. § 270b, this action was brought in the name of the United States for the benefit and on behalf of Adam J. Lanehart, to recover a balance of $11,663.96 alleged to be due on a subcontract performed by Lanehart for United Enterprises, Inc. The District Court rendered judgment in favor of Lanehart in the sum of $3,032.87. 118 F.Supp. 427; Id., D.C., 123 F.Supp. 639.

United Enterprises, Inc., entered into a prime contract with the United States to repair, rehabilitate and remodel the hospital facilities at Camp Polk, Louisiana. United Enterprises, Inc. sublet the painting called for by the general contract to Lanehart at a price of $90,-000, "subject to additions and deductions."

Seaboard Surety Company, the other defendant-appellee, is the surety on the Miller Act bond of United Enterprises, Inc.

Lanehart alleged that he performed under the contract work amounting to $96,217.96, and extra work in the sum of $1,616.60. United Enterprises, Inc. paid $86,170.60, leaving a balance alleged to be due of $11,663.96, the amount sued for. Defendants disputed plaintiff's figures and made part of their answer a schedule showing the amount due plaintiff under the subcontract was $87,978.82, against which payments had been made of $86,170.60, leaving a balance due plaintiff of $1,808.22, which they tendered.

United Enterprises, Inc., and the surety in their answer alleged that certain items of work had not been performed by Lanehart for the reason that these items, under instructions of representatives of the United States, had been eliminated; that appellant knew of the elimination of these items at the time the subcontract was entered into; that the eliminated items totalled $3,294, and that United Enterprises, Inc. paid Lanehart in accordance with computations made by the Government. United Enterprises, Inc. and the surety denied the performance of extra work.

Under the terms of the specifications the Government had the right to increase or diminish the quantities, as follows:

"S.C. 15, Estimated Quantities. The quantities listed below are estimates only. The contractor will be required to complete the work specified herein in accordance with the contract. The contract unit prices will not be changed within the limit of 50 per cent less than the estimated quantities listed below, nor within the limit of 100 per cent more than the estimated quantities listed below."

The subcontract between United Enterprises, Inc. and Lanehart called for the following work to be performed by Lanehart:

(1) "All the painting specified under part 4 of the specifications, Section 7, entitled 'Paints and Painting'", for a lump sum of $90,000.

(2) The priming painting, etc., specified under Part 4 of the specifications, Section 1, entitled "Carpentry and Millwork," *insofar only* as those certain items are detailed in the contract, the price for which was to be over and above the lump sum price of $90,000 for the painting under the "Paints and Painting" work above.

With respect to payment to be received by Lanehart, the subcontract provided that:

"Payment for said work to be on a unit price basis, copy of which is attached hereto and made a part hereof of this contract agreement.

" * * * Differences between unit prices and total lump sum of contract price to be paid subcontractor by general contractor.

"Article XI. The said Contractor agrees to pay to the said Subcontractor for such labor and materials herein undertaken to be done and furnished, the sum of Ninety Thousand and No/100 ($90,000.00) Dollars, subject to additions and deductions as herein provided, and such sum shall be paid by the contractor to the subcontractor as the work progresses in monthly installments, as follows."

Under the terms of the subcontract, the subcontractor agreed to be bound to the contractor by the terms of the general contract, Article 2 of the subcontract reading as follows:

"Article 2. The subcontractor agrees to be bound to the contractor by the terms of the Agreement, Surety Bond, and General Conditions, Drawings and Specifications, for the entire work (which he has examined and read) insofar as they relate in any part or in any way to the work undertaken herein."

The subcontract also contains the following provisions:

"Article 3. The work included in this contract is to be done under the direction of said architect (U.S. Engineer) and his decisions, as to

the true construction and meaning of the drawings and specifications shall be final * * *."

Lanehart, at the commencement of the trial, claimed the differences between the parties to be as follows:

(1) Items 173 and 174 .....$ 3,294.00
(2) Item 143 .............. 3,168.00
(3) Painting under Carpentry .................. 1,070.05
(4) Extras ............... 1,616.60
(5) Difference in counts on items .............. 333.39
(6) Difference between unit prices and total lump sum of contract ...... 381.00
(7) Services and material defendant claims to have furnished plaintiff .... 912.19

$10,775.23
Unaccounted for error .............. 7.30

Total in dispute ......$10,767.93
Admittedly due by defendants 896.03

—Amount sued for ...$11,663.96

The District Court, as has been stated, rendered judgment for plaintiff in the sum of $3,032.87. That sum is made up as follows:

Items originally admitted by defendants ...............$ 1,808.22
Items 173 and 174 ......... 200.00
Painting under Carpentry ... 787.85
Extras ................... 64.40
Difference between unit prices and total lump sum of contract ................. 381.00

$ 3,241.47

Less Counter-claim allowed ............ 208.60

$ 3,032.87

Under the heading "Painting under Carpentry", the plaintiff abandoned the

sum of $282.20, and with respect to services and materials alleged by the defendants to have been furnished plaintiff, the latter recognized the validity of the claim to the extent of $298.60. Giving effect to these adjustments, and to the awards made by the District Court, the differences remaining between the parties, and forming the basis of this appeal, are as follows:

Items 173 and 174 ........$ 3,094.00
Item 143 ................. 3,168.00
Extras ................... 1,552.20
Difference in counts on items 333.39

Total ............$ 8,147.59

All of these differences are affected by the findings of the District Court as to the decisions made by the United States Engineer concerning the interpretation and the performance of both the prime contract and the subcontract.

The controlling issues here may be briefly stated as follows:

1. What is the effect of the subcontract between United Enterprises, as contractor, and Lanehart, as subcontractor, in which Lanehart agreed:

(a) To do certain work included in the contract between United Enterprises and the United States in all respects as United Enterprises was required to do by the plans and specifications prepared by the U. S. Engineer.

(b) To be bound to the contractor by the terms of the agreement, surety bond, etc., for the entire work.

(c) That the work included in the subcontract was to be done under the direction of the Government Engineer, and that his decision as to the construction and meaning of the drawings and specifications should be final. (These provisions have already been referred to herein).

2. Was the District Court clearly erroneous in holding that Lanehart was bound by the Government Engineer's interpretation of the original plans and specifications when the Government Engineer determined,

(a) That Items 173 and 174 of the prime contract did not include interior painting of certain buildings;

(b) That Item 143 was a duplication of the painting in Items 145 and 146;

(c) That the extra for priming porch decking was included in and required by the original Government plans and specifications;

(d) That the extra for cleaning windows was included in the original plans and specifications, and

(e) That differences in counts would be disallowed because already included in another contract item.

3. Was the District Court clearly erroneous in its findings of fact on Items 173, 174, 143, the extras and differences in count?

■ The holding of the trial court that, as a result of the terms of the subcontract, Lanehart was bound by the decisions of the Government Engineer as to what the prime contract required, and that the Government Engineer's interpretation of the original contract was conclusive on Lanehart is correct.

The provisions of the subcontract are clear, and similar contract provisions have been approved and enforced by the United States Supreme Court. United States v. Moorman, 1950, 338 U.S. 457, 461, 462, 70 S.Ct. 288, 94 L.Ed. 256; United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113. In the Moorman Case, the Supreme Court said [338 U.S. 457, 70 S.Ct. 290]:

"Contractual provisions such as these have long been used by the Government. No congressional enactment condemns their creation or enforcement."

### Items 173 and 174

Items 173 and 174 are described in the specifications which were made a part of the general contract, as follows:

Item No.        Description

173    Interior alterations and additions to buildings T–1801, complete, including exterior painting of new woodwork.

174    Exterior and interior alterations and additions to buildings T–7213 (North Camp Polk), complete, including exterior painting of new woodwork.

In the schedule of designations and unit prices contained in the general contract, these jobs bear the same descriptions.

There is sharp conflict in the evidence concerning these items, but there is substantial evidence to the effect that there originally was some doubt as to whether these items included the interior painting of buildings T–1801 and T–7213; that Lanehart and United Enterprises, could not agree as to this, but that as a matter of safety, the interior painting was included in the subcontract and plaintiff valued it at $1,647 for each of the two buildings, or $3,294 for both. The evidence shows that this interior painting would have cost about $1,500 for each building, leaving a profit of approximately $294.

■ It is difficult to understand why there should have been uncertainty concerning the interior painting of these buildings, because nowhere in the description of work to be done is any mention made of interior painting. But, be that as it may, the fact remains that the Government Engineer, whose interpretation of the original contract was conclusively binding on Lanehart, decided that interior painting was not called for.

Lanehart conceded that the only painting done under Items 173 and 174 was of one ladder and one fire escape on the exterior of each building. For this, the District Court allowed $100 for each building.

In his brief, Lanehart concedes that the interpretation of the Government Engineer was that no interior painting was required under these items, and states that such was also his opinion. He contends, however, that although he did no interior painting in the two buildings, he did perform all of the painting required by these two items in accord-

ance with the contract as called for in the plans and specifications, and that he is entitled to be paid the full amount even though the main portion of the amount was intended to cover interior painting.

It seems clear that Lanehart's contentions with respect to these two items had their genesis in the fact that on December 26, 1951, the Government and United Enterprises entered into a supplemental agreement, denominated No. 3, by the terms of which, in lieu of certain contract items which had been found to be unnecessary, or not called for by the specifications, certain additional items were substituted. Included in the funds made available because of work found to be unnecessary or not called for were those allocated to interior painting of the buildings in question. Lanehart contends that because United Enterprises received these funds, they should, in turn, be passed on to him. What he apparently overlooks is that he was bound by the interpretation of the Government Engineer, and that official having decided that no interior painting was required, the disposition of the funds thereby made available was a matter to be determined by the Government's representatives. The mere fact that United Enterprises ultimately received all or part of such funds for other work performed does not entitle Lanehart to such funds. We agree with the learned trial Judge that an award for $100 for each building is adequate.

### Item 143

The prime contract under the heading of "Painting", lists this item as "Exposed New Roof Sheathing and Rafters", estimated quantity 9,000 sq. ft., unit price .094, or $846. The same item is included in the subcontract, but at a unit price of 12¢, or a total of $1,080. This item of painting applies to carpenter work provided for under Item 26, "Roof Sheathing Replaced, Complete, 9000 board feet".

The prime contract and the subcontract, under Items 145 and 146, provided for the painting of screened porches. The District Engineer determined that the painting under Item 143 was in connection with the screened porches, and was a duplication of the painting required under Item 145 and Item 146. As a consequence, the District Engineer deleted Item 143 from the contract, and United Enterprises was not paid for it. Plaintiff concedes in his brief that the only "Exposed New Sheathing and Rafters" that were to be painted under Item 143 were on the porches. He contends, however, that the drafters of the specifications treated the roof sheathing and rafters over the porches as a separate item, and as not being part of the porches as covered by Items 145 and 146. Notwithstanding that he did no painting under this item, he claims not only the estimated 9,000 sq. ft., but 17,400 sq. ft. additional, at the unit price of 12¢, or $2,088, a total under this item of $3,168. The evidence supports the trial court's finding that Item 143 was a duplication of the painting required under Items 145 and 146, and that plaintiff is not entitled to recover therefor.

### Extras

Plaintiff originally claimed the total sum of $1,616.60 for work he alleged was not included in the subcontract, but which he performed at defendant's request. Of this amount, the Court allowed the sum of $64.40, leaving $1,552.20 in dispute. The major portion of this item is made up of the sum of $1,056 for priming porch decking before installation. Plaintiff contends that this work was not included in the original contract, and that he entered into a special agreement with United Enterprises, whereby the latter was to pay time and materials for this work. Defendants deny and the evidence fails to prove the existence of such an agreement. On the contrary, it seems clear from the evidence that when the plaintiff raised the question of additional compensation for this work, a representative of United Enterprises suggested to plaintiff's foreman that records be kept of it, and that

they jointly endeavor to persuade the Government Engineer to authorize payment for this work as an extra item. This was done, but without success, the Engineers ruling that the work in question was included in and required to be performed by the prime contract and the specifications. This is another instance in which the parties are bound by the interpretation of the Government Engineer.

The balance of the claim for extras is made up of the sum of $496.20 for cleaning windows. The contract provided, "Paint spots, oil or stains, upon surfaces shall be removed, and the entire job left clean and acceptable to the contracting officer". The contract also required that the windows be cleaned after re-puttying, and after new glass was installed. The plaintiff concedes that he was required to clean any windows puttied or glazed by him, but contends that his claim is only for cleaning windows which he did not putty or glaze, and which work he contends exceeded his contractual obligation. United Enterprises does not dispute that the work was done, but denies that it exceeded the contractual requirement, and points out that plaintiff performed glazing and painting work in many buildings, on which United Enterprises itself performed no work. We agree with the trial Judge that plaintiff as failed to discharge the burden of proving with legal certainty that the work was extra.

### Differences in Counts on Items

The total sum of $333.39 involved in this item is made up of six items in various amounts. The question involved is not in differences in the physical counting of items, but arises out of interpretations made by the Government Engineer of the specifications. Item 172 of the contract and specifications covered the conversion of certain buildings, at a flat price per building. The sums making up the amount of $333.39 here involved were expended on buildings covered by Item 172, and the Engineer, whose decision, we repeat, was binding upon the plaintiff, determined that these expenditures were covered by the price fixed by the contract for Item 172, and were not compensable under the respective item numbers.

The judgment of the District Court is correct, and it is affirmed.