The **UNITED STATES** of America for the Use of James R. **SODA**, Plaintiff,

v.

Charles B. **MONTGOMERY**, d.b.a. Montgomery Construction Company, U. S. Fidelity & Guarantee Co., Defendants.

Civ. A. No. 5096.

United States District Court
M. D. Pennsylvania.

June 6, 1957.

Cailor & Cailor, Youngstown, Ohio, John H. Bream, Harrisburg, Pa., for plaintiff.

Wherry & Ketler, Grove City, Pa., John R. Lenahan, Scranton, Pa., for defendants.

FOLLMER, District Judge.

1. The defendant, Charles B. Montgomery, d. b. a. Montgomery Construction Company, as the prime contractor, on June 30, 1952, entered into a contract with the United States for the construc-tion of two warehouses at Letterkenny Ordnance Depot, Chambersburg, Pennsylvania, within the Middle District of Pennsylvania.

2. On June 30, 1952, the defendant, Charles B. Montgomery, d. b. a. Montgomery Construction Company, executed and delivered a bond to the United States in the sum of $577,560 on which the defendant, Montgomery Construction Company, was principal and the defendant, United States Fidelity & Guarantee Company, a Maryland corporation, was surety. Said bond was conditioned upon the prompt payment of persons supplying labor and material in the prosecution of the work provided for in the said contract and was in accordance with the requirements of 40 U.S.C.A. § 270a.

3. Charles B. Montgomery's bid was a "lump sum" or total bid which did not set up any separate unit basis or amount for excavation work.

4. The total bid of Charles B. Montgomery included a sum for "roughly what the (excavation) job was going to cost, within a few thousand dollars either way" based on the amount and type of excavation indicated in the Government's plans and specifications, on the basis of an hourly rental rate for "equipment with operators" which James R. Soda had indicated he would charge.

5. By letter dated August 18, 1952, James R. Soda, d. b. a. Soda Construction Company, submitted the rates for various equipment on an hourly basis with operators and supervision supplied. This offer was accepted orally by Charles B. Montgomery, whereupon equipment fully operated was moved in and excavation work begun.

6. The contract was for the rental of equipment on an hourly basis, with operators and supervision, to perform whatever excavation work was required to be done by Charles B. Montgomery, with Charles B. Montgomery retaining primary supervision and direction.

7. There was no contract on a unit price basis predicated upon the plans and specifications of the general contract ei-

ther accepted by Charles B. Montgomery or offered by James R. Soda.

8. There was no agreement that James R. Soda would be bound by the terms, conditions, drawings or specifications of the general contract.

9. The general contract between the United States and Charles B. Montgomery contained a provision as follows:

"4. Changed Conditions.—Should the contractor encounter, or the Government discover, during the progress of the work subsurface and/or latent physical conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown physical conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the drawings and specifications, the contracting officer shall be notified promptly in writing of such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they do so materially differ the contract shall be modified to provide for any increase or decrease of cost and/or difference in time resulting from such conditions. * * * "

10. Shortly after the work of excavation was started, it was found that there was rock which was not indicated by the plans and specifications of the general contract and which would require more equipment and time than had been contemplated by the parties to the general contract.

11. A conference between representatives of the United States and Charles B. Montgomery was held in relation to such changed conditions on March 31, 1953. James R. Soda was invited to and did participate in this conference.

12. At this conference, to assist Charles B. Montgomery to arrive at a determination with the representatives of the United States of an amount to be added to the total general contract cost price by reason of the increased cost caused by the necessity of excavating rock, James R. Soda agreed to deduct $3,000 from his total charges provided a satisfactory settlement could be arrived at between the United States and Charles B. Montgomery at such conference and be approved by the proper Federal agency so that the payment of the pertinent portion of the general contract price be received by Charles B. Montgomery and the amount owing to James R. Soda paid immediately thereafter by Charles B. Montgomery.

13. The excavation work covered by the negotiations of March 31, 1953 had been completed at that time.

14. James R. Soda did not offer to or agree to change his contract from an hourly basis to a monthly basis, nor did he agree to any other changes except to offer to make a reduction of $3,000 from his total amount due in the nature of a discount conditioned upon such immediate settlement.

15. Charles B. Montgomery subsequently appealed from the total increase allowed by the United States on the general contract price, but such appeal had reference to additional cost items other than the cost of excavation with the equipment rented from James R. Soda, and such appeal was conducted by Charles B. Montgomery without notice to James R. Soda, or making him a party to such appeal.

16. The additional amount representing the sum arrived at between the representatives of the United States and Charles B. Montgomery on March 31, 1953, covering the additional cost by reason of encountering rock in the excavation, and known as Change Order No. 1, Supplement No. 1, was approved in Washington, D. C., by the Chief of Engineers on October 13, 1953.

17. The amount representing such Change Order was paid in full to Charles B. Montgomery on November 1, 1953, but thereafter no payments were by him made to James R. Soda.

18. The balance unpaid predicated upon the hourly basis and at the rates specified in the contract between Charles B. Montgomery and James R. Soda is $13,871.41.

19. If the $3,000 discount is applied, the balance would be $10,871.41.

## Conclusions of Law.

1. This Court has jurisdiction of the parties and the subject matter pursuant to the provisions of 40 U.S.C.A. § 270b.

2. Charles B. Montgomery having failed to comply with the conditions upon which the offer of a $3,000 discount by James R. Soda was predicated, is not entitled to the benefit thereof.

3. James R. Soda is entitled to recover the full unpaid balance of $13,871.41 with interest from November 15, 1953.

## Discussion.

This action is instituted for the use and benefit of James R. Soda under the provisions of 40 U.S.C.A. § 270a et seq., covering bonds of contractors on public works. The reference in paragraph two of the complaint to the Montgomery Construction Company as a corporation was amended when it developed that Charles B. Montgomery was doing business as Montgomery Construction Company, an unincorporated concern. The fundamental facts are stated in the Findings of Fact. There was no specific allocation in the general or "prime" contract of a unit price for the excavation work to be performed. James R. Soda agreed to rent the equipment, fully operated, to do whatever excavation work was required of him by Charles B. Montgomery, at a specified hourly rental set forth in a letter to Montgomery. Had the cost of excavation been less than anticipated on the basis of the data shown in the plans and specifications of the original contract, it is quite evident that Montgomery would have paid the hourly rate specified in his contract with Soda and retained any such benefits. However, when rock was encountered and the work took longer than anticipated and the negotiations under the prime contract for changed conditions resulted in a smaller allowance therefor than he hoped for, he seeks to pass any loss of profits on this phase of his contract on to Soda. It is the defendant's position that Soda must be called a subcontractor and by that reason be bound by all the terms of the prime contract between the United States and Charles B. Montgomery. Whether a person contracting to rent equipment with operators for the performance of whatever excavation is required by the contractor is thereby to be called a subcontractor is not material to the issue here. Whatever the proper designation, he is not, in any event, bound by all the terms of the prime contract, including provisions such as adjustments in compensation for changed conditions unless such terms have been incorporated in his contract.

In Ottinger v. United States, 10 Cir., 230 F.2d 405, 406, a somewhat similar situation was present. There Ottinger contracted with the United States to construct powder magazines, roads, etc., at an ammunition depot. It included fertilizing, seeding, mulching, sodding, riprap, ditch checks, etc. Brown agreed to do this latter work at stated unit prices per acre, square and cubic yards respectively. The court there stated: "The subcontract was in the form of a letter written by Ottinger and accepted by Brown." The contract in that case, however, went farther than the one now before us in that "It provided that Brown was to perform certain specific items of work relating to the vegetative cover, erosion control, and similar work on the project, in strict accordance with the specifications of the prime contract." A dispute arose as to the proper method of computing the area of work done. The court, without reference to the prime contract or the amount paid thereunder, held that Brown's method of calculation was correct and that he was entitled to be paid accordingly. The court said: "All the work was done under the supervision and direction of Ottinger, and Brown was entitled to be paid for work which he was directed to do, even though

the amount thereof may not have conformed with the specifications of the prime contract."[1]

Conversely, in United States for Benefit and on Behalf of Lanehart v. United Enterprises, Inc., 5 Cir., 226 F.2d 359, 363, a subcontractor agreed to perform a specified portion of the painting called for by the plans and specifications of the original contract and at a specified total unit price. Under the terms of the subcontract the subcontractor agreed to be bound to the contractor by the terms of the general contract. By reason of such specific inclusion, the court held that "as a result of the terms of the subcontract, Lanehart was bound by the decisions of the Government Engineer as to what the prime contract required, and that the Government Engineer's interpretation of the original contract was conclusive on Lanehart is correct."[2]

No such incorporation of the pertinent provisions of the prime contract into the contract between Montgomery and Soda has been shown in this case. Nor was there any competent evidence to indicate that Soda had ever agreed to any variation of his contract other than the conditional offer of a $3,000 discount. While Montgomery sought to create this inference by his own hearsay statements, he produced none of the persons to whom he attributed his information. The uncontradicted testimony of the plaintiff was that where a contract for the rental of equipment, fully operated, is on an hourly basis, the lessor, unless specifically otherwise provided, has the duty of keeping the machinery oiled and in repair; conversely, on a monthly basis the lessee would have such obligation. There was no evidence that there had been any discussion of any important matters such as this would have been in connection with such a variation of the contract. There was no indication that Montgom-

ery had ever attempted to calculate the price on such a monthly rental basis.

As to the $3,000 offer of Soda, it is quite evident from the evidence presented by Soda that such offer was made for the sole purpose of aiding Montgomery in obtaining a speedy adjustment in order that payments would not be unduly delayed. Montgomery's employees who were present when such discussions took place were not called. Montgomery having failed to comply with the conditions, such offer would not now be construed as reducing Soda's claim for the full unpaid balance under his contract.[3] Soda would, therefore, be entitled to recover the full unpaid balance of $13,871.41 with interest from November 15, 1953, which would seem to be a reasonable time after the payment for this work was made to Montgomery by the United States.

---

1. See also United States, for Use of Moseley v. Mann, 10 Cir., 197 F.2d 39; Edward E. Morgan Co., Inc., v. United States, for Use and Benefit of Pelphrey, 5 Cir., 230 F.2d 896.

2. See also United States, for Use of T. M. Page Corporation v. Hensler, D.C. S.D.Cal., 125 F.Supp. 887.

3. Cf. United States, for Use of Moseley v. Mann, supra.