The **UNITED STATES** of America, for
the Use of James R. **SODA**,
Appellees,

v.

Charles B. **MONTGOMERY**, Trading as
Montgomery Construction Co., United
States Fidelity and Guaranty Company,
Appellants.

No. 12354.

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1958.

Decided March 19, 1958.

**510**

James R. Lenahan, Scranton, Pa. (John V. Wherry, Wherry & Ketler, Grove City, Pa., on the brief), for appellants.

L. M. Cailor, Youngstown, Ohio (John H. Bream, Harrisburg, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

On June 30, 1952, defendant-appellant Montgomery, engaged in the construction business, contracted with the United States to erect two warehouses at Letterkenny Ordnance Depot, Chambersburg, Pennsylvania. That same day Montgomery as principal, and defendant-appellant United States Fidelity & Guaranty Company as surety, executed and delivered a bond to the United States in the sum of $577,560. The bond was drawn in accordance with the Miller Act, 49 Stat. 793 (1935), 40 U.S.C.A. § 270a et seq. It called for prompt payment of all persons supplying labor and material in the prosecution of the work under the contract. The Montgomery bid was on a lump sum basis. It contained, as part of the total, a sum roughly estimated by Montgomery for the excavation work. The source of this figure was an hourly rental rate to be charged by appellee for excavation equipment with operators and supervision. Appellee submitted his rates in a letter dated August 18, 1952. That was orally accepted by Montgomery, the Soda equipment was moved on to the construction site, and excavation commenced.

The trial court found as a fact that the agreement between Soda and Montgomery was for the rental of the former's excavation equipment with operators and supervision, to perform whatever excavation work Montgomery required. The latter retained primary supervision and direction. The court also found specifically that there was no contract between Soda and Montgomery on a unit basis either accepted by Montgomery or offered by Soda, predicated upon the plans and specifications of the general contract and that there was no agreement that Soda would be bound by the

terms, conditions, drawings or specifications of the general contract.

Excess rock, not allowed for by the plans and specifications, was revealed shortly after the work had started. This necessitated an increase of equipment and meant that more time than had been estimated would be needed for the excavation. A conference was held March 31, 1953 between representatives of the government and Montgomery. Soda was invited to participate and did so. He offered to deduct $3,000 from his total charges if a settlement on the amount to be added to the prime contract covering the extra excavation was reached by the government and Montgomery at the conference, including speedy payment to Montgomery of the particular amount involved and immediate payment thereafter by him to Soda of the sum owing the latter. Soda was not so paid. The figure arrived at between Montgomery and the government for the extra excavation work was approved by the government on October 13, 1953 and its full amount paid Montgomery on November 1, 1953 but no payment was made by him to Soda from that date on.

The trial court found as a matter of law that (1) Montgomery had failed to comply with the conditions of the $3,000 discount proposal and could not benefit from it (2) Soda is entitled to recover the full unpaid balance of $13,871.41 with interest from November 15, 1953.

Appellants argue that Soda was bound by the Montgomery-government agreement and subject to its provisions with reference to changed conditions and methods of payment. Admittedly Soda was not a party to that contract. His only arrangement with Montgomery was to rent equipment with operators and supervision. The control of these was in Montgomery. Soda himself had no dealings with the government formally or informally. As the trial court properly held, whether he was called a subcontractor is not material to the issue. His work was accomplished under the supervision and at the direction of Montgomery and he was entitled to be paid for it at the rate to which Montgomery had assented, even though the total may have been more than Montgomery obtained for it from the government under his own contract. See Ottinger v. United States, 10 Cir., 1956, 230 F.2d 405. It is conceded by appellant that Montgomery had no written agreement with Soda whereby the latter accepted the excavation terms of the main contract as in United States for Benefit and on Behalf of Lanehart v. United Enterprises, Inc., 5 Cir., 1955, 226 F.2d 359. Nor is there any sound support in the record for appellant's claim that Soda was working for Montgomery subject to the terms of the government contract.

It is next contended that Soda is estopped from repudiating his discount of three thousand dollars. As we have seen, the district judge in his second conclusion of law held that [152 F.Supp. 312]:

"Charles B. Montgomery having failed to comply with the conditions upon which the offer of a $3,000 discount by James R. Soda was predicated, is not entitled to the benefit thererof."

He found as a fact that "to assist Charles B. Montgomery to arrive at a determination with the representatives of the United States of an amount to be added to the total general contract cost price by reason of the increased cost caused by the necessity of excavating rock, James R. Soda agreed to deduct $3,000 from his total charges provided a satisfactory settlement could be arrived at between the United States and Charles B. Montgomery at such conference and be approved by the proper Federal agency so that the payment of the pertinent portion of the general contract price be received by Charles B. Montgomery and the amount owing to James R. Soda paid immediately thereafter by Charles B. Montgomery." He further found that the government paid Montgomery for the extra excavating on November 1, 1953 "but thereafter no payments were by him made to James R. Soda." The record substantiates these findings of fact by the court and the con-

clusion that the entire balance of plaintiffs' account is due and owing from the general contractor.

Appellants' main point is that Soda failed to file suit within a year after date of final settlement of the prime contract as required by the Miller Act and is therefore barred from recovery.

Section 2(b) of the Miller Act, 40 U. S.C.A. § 270b(b) provides that "* * * no such suit shall be commenced after the expiration of one year after the date of *final settlement of such contract.*" (Emphasis supplied.)

The defendants affirmatively pleaded the defense in paragraph 4 of their answer saying:

"The Act of August 24, 1935, c. 642, sec. 2, 49 Stat. 794 (40 U.S.C. sec. 270b(b)) under which this action is brought, provides that *no* such action shall be commenced after the expiration of one year after the date of final settlement of such contract. Final settlement of the instant contract was made by the contracting officer, more than one year prior to the commencement of the suit."

Other than the above allegation in the answer there was no mention, oral or written, of the statute of limitations defense until appellants' present brief. Taking a position which directly pointed to the abandonment of that defense, counsel for the defendants early in the trial categorically stated "that this whole controversy is whether or not the alleged sub-contractor Mr. Soda is bound by Mr. Montgomery's contract with the Federal Government; and if so, then it is our contention—and I think it would show that we didn't owe Mr. Soda anything— if Mr. Soda is not bound by Mr. Montgomery's contract, we have no defense. That is a legal question." The attorney asserted that in the event Soda was not bound by the prime agreement the amount due him was $10,876.41 not $13,-871.41 which latter figure included the $3,000 Soda had offered to discount on the above stated terms. Again discussing the subject the attorney said, "Our defense is confined entirely to whether or not he (Soda) is governed by the contract between him and the Government." In his continuing effort to arrive at a stipulation and shorten the trial, the attorney repeated this thought several times. No stipulation was actually entered into between the parties because of a dispute over the cost of the work on a monthly basis as the defense contended and at the hourly rate which plaintiff claimed to be governing. But there was never any dispute that the sole fundamental questions were whether the government contract controlled Soda and whether he was bound by his three thousand dollar reduction offer. At the close of the case that was still the situation with the defense in submitting proposed findings of fact and conclusions of law confining these entirely to those problems and making no mention of the suit being out of time under the requirement of 270b(b).

■■ Appellant argues that the Act time limit for starting litigation under it is really a condition precedent. We are inclined to agree. United States for Benefit and Use of Berkowitz v. Frankini Construction Co., D.C.Mass.1956, 139 F.Supp. 153; United States to Use of O'Connell v. Kearns, D.C.R.I.1928, 26 F.2d 235; United States to Use of Pittsburg Planing Mill Co. v. Scheurman, D. C.Idaho 1914, 218 F. 915. We therefore consider that, despite the unmistakable attitude taken at the trial by the defense, it must be established that suit was commenced within the Act's restrictive period.

■ It is further contended on behalf of appellants that the 16th Finding of Fact shows the cause to be out of time. The complaint was filed October 28, 1954. The finding reads:

"The additional amount representing the sum arrived at between the representatives of the United States and Charles B. Montgomery

on March 31, 1953, covering the additional cost by reason of encountering rock in the excavation, and known as Change Order No. 1, Supplement No. 1, was approved in Washington, D. C., by the Chief of Engineers on October 13, 1953."

 That finding is substantiated by evidence. However, it is not a finding that *"the date of final settlement"* of the Montgomery-United States agreement was October 13, 1953. It and the testimony on which it is based merely refers to the price of the additional excavation to be paid Montgomery. There is nothing in the record suggesting it as final settlement of the whole contract. Indeed Montgomery appealed from the allowance to him for the additional excavation and apparently from the allowances to him for other items. In his brief he says "Defendant appealed again and again from the refusal of the government to pay his estimate of increased cost." His trial exhibit D–2 is a copy of an opinion of the Armed Service Board of Contract Appeals *dated February 3, 1956* which denies his appeal seeking an additional $37,871 under his Letterkenny contract. Appellants' own statements in their eleventh and twelfth requested findings of fact simply do not jibe with their current theory of final settlement on October 13, 1953. They there say:

"ELEVENTH: The sum paid to Montgomery by the Government was not accepted by him as payment in full, for the work, rental and services performed by Soda on November 1, 1953 and Montgomery appealed as permitted under the prime contract.

"TWELFTH: On January 15, 1956, Montgomery was informed that his appeal had been denied and he had been paid on a monthly rental basis as allowed by the Federal Government."

Had the statute of limitations defense been raised at the trial, authoritative information might have been produced to fix the true final settlement date of the contract. Undoubtedly that type of dispositive evidence is obtainable.

In the circumstances, the judgment of the district court will be vacated and the cause remanded for further proceedings in accordance with this opinion.