UNITED STATES of America,
Plaintiff,

v.

SEABOARD SURETY COMPANY, Jim
O'Boyle, Defendants.

Civ. A. No. 8415.

United States District Court
N. D. Texas,
Dallas Division.

Nov. 7, 1961.

Barefoot Sanders, U. S. Atty., Dallas, Tex., for plaintiff.

Randolph Scott, Dallas, Tex., for defendants.

ESTES, Chief Judge.

This is a suit instituted by the Plaintiff, United States of America, as a third-party beneficiary to a contract entered into between the defendant Seaboard Surety Company and the defendant taxpayer-subcontractor, Jim O'Boyle, to recover withholding, F.I.C.A. (Social Security) and F.U.T.A. (unemployment) taxes owed by O'Boyle, the taxpayer-subcontractor.

The facts have been stipulated and are, as follows:

Three contracts are involved in this suit—a principal contract, a subcontract, and a performance bond.

The principal contract was entered into between the District Engineer, United States Army Engineer District, Albuquerque, New Mexico, as Contracting Officer, and C. H. Leavell & Company and Dan R. Ponder, Inc., as Eligible Builders. The relevant provision of this contract is as follows:

"GENERAL PROVISIONS. Section 41. Federal, State and Local Taxes (Except Real and Personal Property Taxes).

"(b) Except as may be otherwise provided in this Housing Contract, the contract price includes all Federal, State and local taxes and duties in effect and applicable to this Housing Contract on the contract date, except taxes from which the eligible builder or the transactions or property covered by this Housing Contract are then exempt. Duties and Federal transportation taxes are included in the contract price unless otherwise specifically excluded."

The subcontract was entered into between C. H. Leavell & Co., Contractor, and Jim O'Boyle & Co. (sole proprietorship), Sub-Contractor. The relevant provisions of this contract are as follows:

"SECTION 5. Insofar as the provisions of the general contract do not conflict with specific provisions herein contained they and each of them are hereby incorporated into this Subcontract as fully as if completely rewritten herein. The Subcontractor agrees that he will so perform this agreement as not to violate any terms, a covenant or condition of said general contract. The relationship of the Subcontractor hereunder towards the Contractor shall be the same as that of the Contractor towards the Owner under said general contract and the relationship of the Contractor hereunder to the Subcontractor shall be the same as that of the Owner towards the Contractor under said general contract.

"SECTION 14. The Subcontractor agrees to pay and does hereby accept full and exclusive liability for the payment of any and all contributions or taxes for Unemployment Insurance and/or Old Age Retirement Benefit, Pensions or Annuities, now or hereafter imposed by the Government of the United States, and/or by the Government of any state or territory of the United States, which are measured by the wages, salaries or other remunerations paid to persons employed by the Subcontractor on work performed under the terms of this Subcontract;

also Subcontractor agrees to pay and hereby accepts full and exclusive liability for the payment of, any and all Sales or Use Taxes, or taxes measured by receipts in connection with the work under this Subcontract."

The contract bond was entered into between Jim O'Boyle & Co., Principal, and Seaboard Surety Company, Surety, and said contract relates to the performance of the subcontract between C. H. Leavell & Co. and Jim O'Boyle & Co. Relevant provisions of this contract bond are as follows:

First paragraph:

"NOW, THEREFORE, if the Principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract [Subcontract referred to above] and any extensions thereof that may be granted by the Contractor, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all modifications, additions, or alterations of said contract that may hereafter be made, and shall also promptly make payment in full to all persons, firms, partnerships, corporations or others, supplying labor and/or material, and/or services, and/or utilities and/or equipment, etc. in the prosecution of the work provided for in said contract and any and all modifications, additions or alterations of said contract that may hereafter be made, and shall also fully indemnify and save harmless the Contractor from all cost and damage which it may suffer by reason of failure so to do and shall fully reimburse and repay the Contractor all outlay and expense which the Contractor may incur in mak-

ing good any such default, then this obligation shall be void; otherwise, to remain in full force and effect." * * *

Last paragraph:

"Said Surety and said Principal further agree that this bond shall inure to the benefit of, and may be sued directly upon, by any person, firm or corporation furnishing labor, material, services, utilities and/or equipment, etc., in the prosecution of the work provided for in said contract, or any modifications, additions or alterations thereto, who has the right to establish a lien or claim against owner and/or owner's property, premises or improvements and/or any funds accrued, or to accrue, from owner to Contractor, and/or who has right of action on Contractor's bond given to owner under federal, state or municipal laws or regulations; and this bond shall be construed to require the Surety and the Principal to pay directly to such person, firm or corporation the amount of its claim for labor, material, service, utilities and/or equipment, etc., furnished in the prosecution of such work."

The statutes involved are the Miller Act, 40 U.S.C.A. § 270a et seq.; the Internal Revenue Code of 1954, Sections 31(a) (1), 3402(a) and 3403, 26 U.S.C.A. §§ 31(a) (1), 3402(a), 3403 as to the withholding tax, Section 3301, 26 U.S.C.A. § 3301 as to the F.U.T.A. (unemployment) tax, and Section 3101, 26 U.S.C.A. § 3101 as to the F.I.C.A. (Social Security) tax.

It is uncontested that the unpaid tax liability for withholding, F.I.C.A., and unemployment (F.U.T.A.) taxes owing by Jim O'Boyle and arising out of wages paid for labor and services rendered Jim O'Boyle & Co., on the subcontract is as follows:

| | | |
|---|---|---|
| 2d Q 1958 Withholding Tax | $ 1,705.00 | plus interest |
| 2d Q 1958 FICA Tax | 825.00 | plus interest |
| 3d Q 1958 Withholding Tax | 12,619.36 | plus interest |
| 3d Q 1958 FICA Tax | 6,852.13 | plus interest |
| 4th Q 1958 Withholding Tax | 3,459.90 | plus interest |
| 4th Q 1958 FICA Tax | 1,677.04 | plus interest |
| 1958 FUTA Tax | 7,526.32 | plus interest |
| | $34,664.75 | plus interest |

The legal question involved is whether under the terms of the principal contract, subcontract and contract bond, the plaintiff, United States of America, is entitled to recover as a third party beneficiary from the defendant surety company for withholding, F.I.C.A. and F.U.T.A. taxes owing by O'Boyle, the taxpayer-subcontractor, and arising out of the subcontract for which the surety company issued a contract bond.

Plaintiff urges that it is entitled to recover under three theories: (1) that the United States of America is a third-party beneficiary for the withholding taxes as a claimant "supplying labor" within the first paragraph of the contract bond; (2) that the United States of America is a third-party beneficiary for the F.I.C.A. and F.U.T.A. taxes under the provisions of Section 14 of the subcontract and the first and last paragraphs of the contract bond; (3) that the United States of America is a third-party beneficiary for all the involved taxes under the provisions of Section 41(b) of the principal contract, Section 5 of the subcontract, and the first and last paragraphs of the contract bond.

■ With reference to Point No. 1, plaintiff's theory is that the United States of America is a supplier of labor and is entitled to recover under the Miller Act. The cases have established beyond any reasonable question that the wages withheld for taxes from laborers' salaries are not wages within the terms of the bond, but are taxes due by the employer to the United States of America. United States Fidelity & Guaranty Co. v. United States, 201 F.2d 118 (10th Cir., 1952); United States v. Crosland Construction Co., 217 F.2d 275 (4th Cir., 1954); General Casualty Co. v. United States, 205 F.2d 753 (5th Cir., 1953); Westover v. William Simpson Const. Co., 209 F.2d 908 (9th Cir., 1954); United States v. Zschach Const. Co., 209 F.2d 347 (10th Cir., 1954); First National Bank in Yonkers v. City of New York, 177 F.Supp. 175 (S.D.N.Y.1959); and Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953).

■ While the obligation of the surety in the instant case relates to payment of persons supplying "labor and materials," typical of Miller Act bonds, it is evident from the terms of the bond that this bond does not come within the purview of the Miller Act. The bond was made for the benefit of the General Contractor, C. H. Leavell & Co., and guaranteed to the General Contractor the payment of all labor, materials, tools, services and equipment in connection with the O'Boyle subcontract for the masonry work. There is nothing in the bond contract showing that the surety contracted for more than to guarantee to the General Contractor the payment of all labor, materials, tools, services and equipment of the subcontractor. The bond here was not furnished to the United States of America, as provided for in the Miller Act. Since the unpaid taxes are not wages so as to entitle the United States of America to the benefits of the statutory bonds required under the Miller Act, plaintiff's position is untenable.

The following statement from 25 Fordham Law Review 245 (Summer 1956) is applicable to plaintiff's theory of recovery under the Miller Act:

"In recent years a number of our courts have also held that there is no liability under a payment bond taken pursuant to the Miller Act for federal taxes owed by a contractor or subcontractor (citing many cases). While the Government has now accepted the conclusion of the various appellate courts that the liability of an employer to pay over to the Government amounts deducted and withheld from employees' wages is a tax liability rather than a wage liability, it has by no means abandoned the fight. The Government was successful in United States v. Phoenix Indemnity Co., 231 F.2d 573 (4th Cir., 1956) * * *."

■ While the law applied to the facts of the instant case makes it clear that plaintiff cannot recover under the Miller Act from the defendant Seaboard Surety

Company the taxes owed by Jim O'Boyle, the court further finds that the plaintiff has not sustained the burden of proof as to filing the suit within the time limit prescribed by the statute. The Miller Act, 40 U.S.C.A. § 270b(b), states that "no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract." Plaintiff's evidence does not show when the final settlement was made upon the contract, but it is noted that the tax liability was incurred during the second, third and fourth quarters of 1958. The contract provided for partial payments as the work progressed, and the court has not been informed as to when the Comptroller General's certificate of final settlement was issued. The suit was filed February 29, 1960, which may have been beyond the one-year statutory limitation period for such suits. The time limit imposed by the statute is a condition precedent on the right to sue, and not merely a defense in bar of the remedy. United States v. Montgomery, 253 F.2d 509, 512 (C.A.3, 1958); United States v. Frankini Construction Co., 139 F.Supp. 153 (D.C. Mass.1956); United States v. Kearns, 26 F.2d 235 (D.C.R.I., 1928); United States Pittsburg Planing Mill Co. v. Scheurman, 218 F. 915 (D.C.Idaho 1914).

▮ The court is of the opinion that United States Fidelity & Guaranty Co. v. United States, supra, is controlling. In that case, C. H. Leavell & Co. was the general contractor, just as in the instant case. It is the same C. H. Leavell & Co.; the subcontract in the instant case was C. H. Leavell & Co.'s Standard Subcontract Form and appears to be the same subcontract form as was considered in that case. The court agrees with the holding of the Tenth Circuit in the Fidelity & Guaranty case, supra, and considers that the Fifth Circuit is also in agreement, since in General Casualty Co. of America v. United States, 205 F.2d 753, the Fidelity & Guaranty case was cited with approval. Further endorsement of the holding of the Tenth Circuit and Fifth Circuit appears in United States v. Crosland, 217 F.2d 275 (4th Cir., 1954), where the Fourth Circuit is in agreement with law as enunciated in the previously cited cases.

Plaintiff urges the dissenting opinion in the United States Fidelity & Guaranty case, supra. The court is of the opinion that the majority opinion in that case, which has been cited by the Fifth Circuit in the General Casualty case, the Fourth Circuit in Crosland, and by many other courts, is here controlling.

Plaintiff relies primarily upon United States v. Phoenix Indemnity Co. v. United States, 231 F.2d 573 (4th Cir., 1956). The facts of the Phoenix case are to be distinguished from the facts in the case at the bar. In the Phoenix case, no subcontract was involved. The tax liability and the surety bond was the Housing Authority of the City of Fayetteville, N. C. There, the surety company agreed to undertake the performance of the contract upon the default of the contractor. In the instant case, there is no evidence that the defendant surety company in any way undertook to perform the contract for him.

Plaintiff has cited United States Home Indemnity Co. v. American Employers Ins. Co., 192 F.Supp. 873 (D.N.D., 1961). That case lends no support to plaintiff's cause, for there the surety did far more than execute its contract bond. The surety made a collateral agreement with the prime contractor when the subcontractor defaulted, and the court held:

"In effect, York (the subcontractor) was a mere agent of Home Indemnity, and was the vehicle utilized by the surety in completing the subcontract as required by the performance bond."

The court clearly limited its holding to the facts of that case by the statement:

"By this the court means only that where the taxes are incurred under the facts here present is the surety to be held liable."

The facts of the instant case are too far removed from the facts of that case to place liability on the surety here.

The court does not subscribe to plaintiff's theory that the United States of America is in a position analogous to an assignee of wages. The tax indebtedness arose by virtue of federal statute and not from any contract of assignment of the parties. The law is clearly against plaintiff on its first theory of recovery.

Plaintiff's second theory is that the United States of America should have a recovery for the F.I.C.A. and F.U.T.A. taxes under the provisions of Section 14 of the subcontract and the first and last paragraphs of the contract bond. Section 14 of the subcontract provides that the subcontractor "agrees to pay and does hereby accept full and exclusive liability for the payment of all taxes for unemployment insurance and/or Old Age Retirement Benefit, Pensions or Annuities." Thus, subcontractor O'Boyle promised the General Contractor that he would pay the F.I.C.A. and F.U.T.A. taxes. The controlling question is: Was Section 14 of the subcontract intended by Leavell and O'Boyle to make the United States of America a third-party beneficiary with the right to sue directly to enforce the promise?

The obligation of the subcontractor to pay the F.U.T.A. and F.I.C.A. taxes arose under the federal statutes, just as did his obligation to pay the withholding taxes. However, since Section 14 does not refer to withholding taxes, plaintiff does not contend they are covered under that provision. It is clear that Section 14 of the subcontract is a promise from the subcontractor exclusively to the general contractor, and the court finds no logical reason to believe that the parties intended to make the United States of America a third-party beneficiary.

O'Boyle's failure to pay the taxes was not a matter of contract, but was a matter of statutory liability for which he alone is liable. United States Fidelity & Guaranty Co. v. United States, supra, 201 F.2d at 129; Central Bank v. United States, supra, 345 U.S. at 645, 73 S.Ct. at 917. The holding of the Tenth Circuit in the United States Fidelity & Guaranty case referred only to withholding taxes.

However, the same court, in United States v. Zschach Construction Co., 209 F.2d 347 (10th Cir., 1954), considered withholding and employment tax liability. The court stated: "It is conceded that this case is indistinguishable in fact or law from that of United States Fidelity & Guaranty Co. v. United States," and held that the prime contractor and his sureties were not liable. The holding of the Tenth Circuit in Zschach applies the same law to employment taxes as to withholding taxes insofar as liability of the surety is concerned.

Since the General Contractor is not indebted to the United States of America for the taxes in question, the United States must claim to be a donee beneficiary. The government has not sustained the burden of proving that the parties desired and intended to confer such benefit as a gift to the United States. If the contracting parties intended to make the United States a donee beneficiary, why did they exclude the withholding taxes on wages, which amounts to more than one-half the total tax liability?

It is evident that the General Contractor was primarily concerned with its own position and its own potential liability; and when Section 14 is considered in conjunction with the first and last paragraphs of the contract bond, it could hardly be clearer that the General Contractor, in obtaining the bond from the subcontractor, did not intend to benefit the United States as a third-party beneficiary.

The first paragraph of the bond conclusively shows that the intended beneficiaries were persons "supplying labor and/or material, and/or services, and/or utilities and/or equipment, etc." The United States does not qualify in any of the above categories of the bond contract.

The last paragraph of the surety bond sets out the classes of persons who may sue directly on the surety bond. The relevant portion of said paragraph is, as follows:

"Said surety and said principal further agree that this bond shall inure to the benefit of, and may be sued directly upon, by any person, firm or corporation furnishing labor, material, services, utilities and/or equipment, etc., in the prosecution of the work provided for in said contract * * * "

The United States is not listed in the contract bond as being in the class of persons entitled to sue on the bond. The court does not agree with plaintiff's contention that since the clause does not *expressly limit* the classes of persons who may sue, the United States is within the class of persons entitled to sue. The contract of the parties cannot be so construed as to mean that the listed classes of persons, *and all others not expressly prohibited,* are entitled to maintain suit. It is the opinion of the court that the clear, concise language of said paragraph does not include the United States in the class of persons who might sue directly upon the bond.

The Court does not agree with plaintiff's argument that the United States comes within the "etc." provision of the first and last paragraphs. "Etc." is used to indicate things of like character, and the taxes in question are not like labor, material, services, utilities or equipment.

The presumption is that the parties contract only for themselves, and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. Knox v. Ball, 144 Tex. 402, 191 S.W.2d 17, 21, 164 A.L.R. 1453 (1945). It appears that Section 14 of the subcontract, when considered along with the first and last paragraphs of the surety bond, was made to cover the subcontractor's obligation to the contractor, and not for the benefit of the government.

Plaintiff's third point is that a recovery of all the taxes lies under the provisions of Section 41(b) of the principal contract, Section 5 of the subcontract, and the first and last paragraphs

of the contract bond. Section 41(b) of the principal contract provides that " * * * the contract price includes all Federal * * * taxes * * * " Plaintiff's argument is that Section 5 of the subcontract incorporates the foregoing provisions into the subcontract, and the first and last paragraphs of the contract bond guarantees performance of all agreements in the subcontract. Plaintiff states that the language of Section 41(b) has not previously been interpreted by the courts and that the interpretation here is one of first impressions.

Paragraph 41(b) of the general contract is merely a clarification of the contract price. It does not contain any promise to pay and does not create any liability to pay taxes, as that liability existed by statute.

In the final analysis, the answer to the issue before the Court turns upon the simple question: Did the defendant Seaboard Surety Company, either expressly or by reasonable implication, promise to pay O'Boyle's unpaid taxes? There is certainly no such express promise, and the language of the instruments construed in the light of the purposes, reasonable intent of the parties, the cases and statute brings the court to the conclusion that the defendant Seaboard Surety Company did not so promise. Therefore, the defendant Surety Company is not liable on its bond for O'Boyle's unpaid taxes arising out of his subcontract with C. H. Leavell & Co., and as to defendant Seaboard Surety Company plaintiff will take nothing. No costs are allowed to, or assessed against, the defendant Seaboard Surety Company.

The defendant Jim O'Boyle, though duly served with process on March 1, 1960, has not appeared or answered and is, therefore, found to be in default. It appearing to the Court from the facts and the law that the defendant Jim O'Boyle is liable to plaintiff for the amount of $34,664.75 plus interest and costs of suit, judgment will be entered accordingly.

Counsel will submit a decree in accordance with this memorandum opinion.