JIMÉNEZ Y SALELLAS, INC., Plaintiff and Appellant, *v.* MARYLAND CASUALTY CO., Defendant and Appellee.

No. CE-64-10.        Decided April 1, 1965.

---

*Rafael Pastor* for petitioner (appellant). *Rivera Zayas, Rivera Cestero & Rúa,* and *José R. Lázaro Paoli* for defendant.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The Puerto Rico Industrial Development Company contracted with Brico Construction Co. for the construction of a building. Brico Construction would construct it. Development required Brico to post the bond required by law whenever the Government or one of its agencies contracts for the construction of some work, 22 L.P.R.A. §§ 47 and 58. On the terms of the bond, the law provides the following:

"The above-mentioned bond shall be posted by the contractor in cash, by certified check, or through the surety of a bonding company authorized to do business in Puerto Rico, and said payment bond shall secure jointly and severally with the contractor, to the extent of liability covered by the bond, (1) the payment, to the workers and employees of the contractor, of the salaries and wages earned by them in their work; and (2) the payment, to the persons selling, supplying, or delivering equipment, tools, and materials for the work, of the price or value of the materials, equipment, and tools supplied, sold or delivered. The amount of this payment bond shall be not less than one-half of the total value of the contract, plus any amplification, enlargement, or addition thereto." 22 L.P.R.A. § 48 (vol. 5, 1964 ed., p. 15).

Brico posted the corresponding bond, defendant being the bonding company.

Brico subcontracted with plaintiff-appellant for the construction of the roof of the building for the price of $5,298.72. Appellant performed its part of the contract, but Brico still owed $1,000 to plaintiff. Plaintiff filed an action of debt against the bonding company. The District Court dismissed

the complaint on the ground that plaintiff's cause of action had prescribed. The Superior Court affirmed. We issued a writ of certiorari.

Appellant assigns before us the following two errors: (1) that the Superior Court erred in holding that the prescriptive term referred to in the Act is not susceptible of interruption by an extrajudicial claim; and (2) that the court erred in failing to pass on plaintiff's contention that defendant was barred from raising the defense of prescription to resist the complaint. For the purposes of discussion, we have inverted the order in which appellant assigns them.

Before passing upon the two questions raised, let us examine briefly the course of the legislative and judicial actions which have created the present state of law on this matter. It was not until the enactment of Act No. 388 of May 9, 1951 (Sess. Laws, p. 948) that the subcontractors and materialmen in the public works were protected by a performance bond against the insolvency or refusal of the contractors to pay the debts incurred for services and materials supplied to them. The former Act, No. 31 of April 23, 1931 (Sess. Laws, p. 340), limited its protection to the laborers and employees working on such works. Furthermore, irrespective of the Act of 1931 *supra*, the state of law prior to Act No. 388 of 1951 practically denied to the materialmen and subcontractors any protection against the insolvency or reluctance of contractors to pay, owing to the former judicial attitude of strictly construing the bond contracts. In *Cristy & Sánchez* v. *Commonwealth*, 84 P.R.R. 226 (1961), we reexamined the judicial precedents applicable at that time to bonds in the construction of public works. There we expressly overruled the cases of *Municipality of Fajardo* v. *Axtmayer et al.*, 31 P.R.R. 780 (1923); *Morales* v. *Chabert*, 43 P.R.R. 114 (1932); and *Battle* v. *Pereyó*, 67 P.R.R. 621 (1947), and held that, considering jointly the bond instrument, the General Specifications and the public works con-

tract, the materialmen and labor, including the subcontractors, were covered by the bond contract.[1]

We also said in *Cristy, supra,* that the strict construction of bonds gained favor at a time when the personal bondsmen, by a mere act of liberality, secured the contract, but that times had changed with the advent of surety companies making a business of acting as surety for compensation. We pointed out that the liberal or broad construction in these cases is controlling. *Cristy, supra* at 234. We have reaffirmed that position in subsequent decisions. See *Ulpiano Casal, Inc.* v. *Totty Manufacturing Corp.,* 90 P.R.R. 719 (1964); *A. L. Arsuaga, Inc.* v. *La Hood Const., Inc.,* 90 P.R.R. 101 (1964). *Cf. Maryland Casualty Co.* v. *Quick Construction Corp.,* 90 P.R.R. 323 (1964).

Let us examine the first error assigned. The legal provision referred to by appellant in its assignment of error is § 9 of Act No. 388 of May 9, 1951, 22 L.P.R.A. § 55, which reads as follows:

"The cause for action authorized under sections 47–58 of this title against the bond and the bondsmen of the contractor shall be understood to have prescribed six months after final acceptance of the work by the Commonwealth of Puerto Rico. After such period has elapsed, the bond may be cancelled, unless some judicial claim under sections 47–58 of this title is found pending. In such case, the bond shall not be cancelled until final judgment has been entered with respect to the pending claim or claims and same have been satisfied to the limit of the liability of the bond and the bondsmen."

The work in question was accepted by the Industrial Development Company on January 18, 1962. The complaint was filed on February 20, 1963, or 13 months after acceptance of the work. Appellant contends that the six-month period established by the provision copied above was inter-

---

[1] The bond contract in that case was executed in 1948, wherefore Act No. 388 of 1951 was not applicable to it.

rupted by the extrajudicial claims which it instituted. It invokes § 1873 of the Civil Code, 31 L.P.R.A. § 5303, which provides:

"Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor."

· Appellee maintains that plaintiff's cause of action prescribed upon expiration of the six-month period provided by law without plaintiff having instituted any judicial action. The District Court concluded that plaintiff's cause of action "prescribed and was extinguished," pursuant to the provisions of 22 L.P.R.A. § 55 *supra*. The Superior Court upheld the District Court and stated that "as to the bond and the bondsmen, the six-month term is fatal if there is no judicial claim."

· ■ Appellant is not right because the term in question is one of extinguishment rather than of prescription. The Act itself, by its own terms, decides the contention when it expressly states that "After such period [of six months] has elapsed, the bond may be cancelled, *unless some judicial claim* under sections 47–48 of this title *is found pending*." 22 L.P.R.A. § 55. (Italics ours.) In the absence of that provision, perhaps there would be merit in appellant's contention, but it is idle to argue against the express letter of the law. As we have seen, the law requires that judicial claim shall have been instituted. This is a case in which, as observed by Pérez González and Alguer, from the literal wording of the provision we must conclude that it is one of extinguishment rather than of prescription.[2] *Cf. Sec. of Labor* v. *Superior Court*, 91 P.R.R. 831 (1965); *Eisele* v. *Orcasitas*, 85 P.R.R. 84 (1962); and *Felici* v. *Ribas*, 11 P.R.R. 517, 524 (1906).

---

[2] Notes by the authors cited in 1-2 Enneccerus, *Tratado de Derecho Civil* 494 (translation and comments by those authors, 1935).

To the foregoing we may add that the Puerto Rican lawmaker followed the pattern of an act of the Congress of the United States,[3] which also prescribes a term within which to exercise the action, and the federal decisions have held that the exercise of the judicial action within that term is imperative on pain of forfeiting the right.[4] Those decisions are not binding in our opinion, but they are highly persuasive owing to the source of Act No. 388 under consideration.

If the statute had not been explicit, it would have been necessary to undertake the task of drawing a line between extinctive prescription and extinguishment. This is "one of the most arduous and obscure questions of the law," says Garcerán De Vall in his well-documented volume on this matter.[5] Practically all jurists are agreed on this. Castán says that "the indefinite technique of our Civil Code, and even of our scientific doctrine (still thinly elaborated on this point), do not permit to lay out with accuracy the demarcation between cases of prescription and of extinguishment."[6] De Diego writes that "The frontiers between extinguishment and prescription are most blurred in the Law."[7] The distinction between extinguishment or decadence and prescription is frequently so subtle, says Rotondi, that some assert that there is a substantial identity between the two institutions.[8]

---

[3] 40 U.S.C. § 270a *et seq.*; House Proceedings (1951), p. 1296.

[4] *United States, etc.* v. *Southern Construction Co.*, 229 F.Supp. 873 (1964); *Travis Equipment Co.* v. *D & L Const. Co. & Associates*, 224 F.Supp. 410 (1963); *United States, etc.* v. *Buckeye Union Cas. Co.*, 207 F.Supp. 552 (1962); *United States, etc.* v. *MacKenzie-Foster Co.*, 207 F.Supp. 210 (1962); *United States, etc.* v. *Seaboard Sur. Co.*, 201 F.Supp. 630 (1961); *United States, etc.* v. *Enterprise Engineering & Const. Co.*, 169 F.Supp. 131 (1958); *United States, etc.* v. *Standard Acc. Ins. Co.*, 158 F.Supp. 616 (1958), *aff'd*, 257 F.2d 78 (1958).

[5] *La Prescripción Extintiva* 27 (1944).

[6] 1-2 *Derecho Civil Español, Común y Foral* 853 (10th ed., 1963).

[7] *Instituciones de Derecho Civil* 335 (1959).

[8] *Instituciones de Derecho Privado* 115 (Spanish translation of the 6th ed., Ed. Labor, 1953).

Since our Civil Code, like the Spanish and unlike the Italian Code,[9] does not regulate or define this institution of extinguishment, we shall turn to it for a moment. The doctrine and the jurisprudence recognize it, although its characteristics, as we have pointed out, are not yet clearly defined. Pérez González and Alguer point out that the deficient technique of our Civil Code as respects this matter renders difficult the precise differentiation between prescription and extinguishment, so that in many cases the determination whether it is one or the other constitutes a real problem.[10] The doctrine on the matter is mostly of jurisprudential formation, and although there is basis for it in the Civil Code, its technique, although not an obstacle, is of no help. The practical difficulty of establishing the difference between prescription and extinguishment or decadence is such that some authors refuse to recognize that there is some difference between these two institutions.[11]

However, some authors have clarified the problem considerably. It is not necessary to transcribe here the expositions which have been made on the matter, but it may be useful to point out some sources. Castán treats the matter under the title *La Caducidad o Decadencia de Derechos*, and points out the most important differences which he sees between prescription and decadence. See *op. cit. supra* at pp. 850–54. See, also, II Santamaría, *Comentarios al Código Civil* 1212–14 (1958), and I-II Puig Peña, *Tratado de De-*

---

[9] This Code treats the matter in Book VI, Tit. V, §§ 2934–69, under the title *De la Prescripción y de la Decadencia*. It must be said in passing that the Italian Civil Code of 1942, purged already from the impertinences of Fascism, is considered the most modern and the best, or one of the best of any other written. A translation thereof into Spanish is found in 1 Messineo, *Derecho Civil y Comercial*, a treatise consisting of eight volumes and of which there is a Spanish translation by the Spanish magistrate Sentis Melendo (1954).

[10] *Ibid.* at 492.

[11] See 1 Ruggiero, *Instituciones de Derecho Civil* 340 (Spanish translation of the Italian 4th ed.); Rotondi, *supra*.

*recho Civil Español* 453–56 (1958). De Diego discusses the matter at pp. 334–35 of his *op. cit. supra*, and Messineo at p. 75, vol. II of his *op. cit. supra*. Velázquez, in *Las Obligaciones Según el Derecho Puertorriqueño* 256 (1964), discusses the differences between extinguishment and prescription. See, also, the discussion on the matter published by that author in *La Extinción de la Acción de Filiación en el Derecho Puertorriqueño*, 17 *Rev. C. Abo. P.R.* 237, 246–52 (1957).

For specific examples of extinguishment in civil law, with reference to the corresponding sections of the Civil Code, see the notes by Pérez González and Alguer at p. 492 *op. cit. supra*; Castán, *op. cit. supra* at 853–54; Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño* 257 (1964); and the *Diccionario de Derecho Privado, Apéndice*, p. 179 (Editorial Labor, 1963).

■■ The doctrine of estoppel is invoked in the aforementioned second error. It is argued that defendant was barred from raising the defense of prescription of plaintiff's action because the former offered to pay, and that it led plaintiff to believe that it would be paid without the need of judicial action. The evidence is conflicting on this point. The trial court which was the District Court, determined as a matter of fact that defendant "at no time promised to pay to plaintiff the required sum, nor made any statement which could lead plaintiff to believe that such sum would be paid by Maryland Casualty Co." We have no elements of judgment to warrant our disturbing that finding of fact of the trial court. Obviously that was also the position of the Superior Court, and we have no reason to reverse it. Perhaps the six-month period is too short in view of the time which a competent company may delay a matter such as this, and perhaps that term ought to be one year as in the Federal Act. In that assumption, the prospective remedy

lies with the legislative rather than with this forum. In claims of this nature the failure to institute judicial action within the term fixed by law and to permit the same to expire, in the belief that they will pay of their own volition, shows regrettable naiveness. The second error was not committed either.

The judgment rendered by the Superior Court in this case will be affirmed, without award of attorney's fees.